[No. B003867. Second Dist., Div. Three. Feb. 8, 1985.]

DENNIS BOGARD et al., Plaintiffs and Appellants, v.
EMPLOYERS CASUALTY COMPANY, Defendant and Respondent.

## COUNSEL

Cheong & Denove and Mary M. Bennett for Plaintiffs and Appellants.

Murchison & Cumming, Dallas Sacher and B. Eric Nelson for Defendant and Respondent.

**OPINION**

**LUI, J.—**

SUMMARY

Appellants Dennis and Pearl Bogard (appellants) appeal from a judgment of dismissal entered following the sustaining of a demurrer to their second amended complaint without leave to amend against Employers Casualty Company (Employers). In their second amended complaint, the Bogards alleged three causes of action: breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress. For the reasons stated below, we reverse the order of dismissal and direct the trial court to grant appellants a reasonable time within which to amend their pleadings in a third amended and final complaint.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 5, 1976, Courtney Matejka, a three-year-old girl, was bitten and severely injured by a dog owned by appellants at appellants' home. At that time, appellants were insured under a homeowner's liability insurance policy issued by Employers. The policy's coverage extended to bodily injury and personal liability, and it contained a liability limit of $100,000 per occurrence.

Following this incident, the Matejkas brought suit against appellants and Lawrence Sando (the underlying action)[1] for the injuries sustained by Courtney. Appellants tendered the defense of that action to Employers who retained counsel to conduct the defense. On June 8, 1982, the underlying action was settled for $80,000.

On February 9, 1983, appellants filed the first complaint against Employers in the present action alleging bad faith, intentional infliction of emotional distress, negligent infliction of emotional distress, and unfair practices. Employers successfully demurred to the complaint, and on May 6, 1983, appellants filed their first amended complaint. The trial court sustained Employers' demurrer to that complaint with leave to amend. On July 1, 1983,

---

[1]Prior to any disposition of the suit, Sando died. The parties subsequently stipulated that any recovery of the Matejkas against Sando would be limited to the $100,000 coverage limit in the insurance policy under which Sando was insured.

appellants filed their second amended complaint[2] to which Employers again demurred. On September 6, 1983, the trial court sustained the demurrer to all three counts without leave to amend and dismissed the action against Employers.

In ruling on Employers' demurrer to the second amended complaint, the trial court took judicial notice of the order approving the settlement of the Matejka claim. The trial court then sustained the demurrers to the three

---

[2]We first note that the second amended complaint is no more an example of artful pleading than either of its predecessors. It appears that appellants thought they had a cause of action for breach of the duty to defend or breach of the covenant of good faith and fair dealing, or both, but weren't sure what facts they needed to allege to state either one. The result is a pleading which contains every allegation that could lead to a conclusion that Employers breached some duty but never shows how these facts constitute causes of action for breach of the duty to defend or breach of the covenant of good faith and fair dealing.

The allegations in the second amended complaint may be summarized as follows:

In the first count of the complaint, appellants alleged that Employers breached the duty to defend and the covenant of good faith and fair dealing by engaging in the following conduct over a two- and one-half year period:

1. Counsel retained by Employers for the defense of the underlying action informed appellants on four separate occasions (Sept. 7, 1979; June 19, 1980; Sept. 9, 1980; and July 24, 1981) that he did not represent appellants' interests, but rather, represented only Employers' interests in the settlement aspect of the case. On those occasions he further advised appellants to retain independent counsel to represent their interests in the settlement negotiations;

2. Employers failed promptly to investigate and process the Matejka claim;

3. Employers refused to accept a settlement offer at policy limits for $100,000 made on August 24, 1979;

4. Finally, Employers failed to analyze the claim and conduct discovery to determine its true value, while continuing to undervalue it.

Appellants went on to allege that as a result of being told counsel hired by Employers did not represent their interests in the settlement aspect of the case, they retained independent counsel to represent their interests, thus incurring attorney's fees. Although they did not allege that they ever sought and were denied those attorney's fees by Employers, there was no indication in the record or at oral argument that Employers was at any time willing to undertake payment of those fees, and the point does not appear to be in dispute.

In addition, as a result of Employers' conduct, appellants alleged that they incurred general damages, suffered mental anguish and emotional distress, and became ill, nervous and upset. They further alleged that Employers' mishandling of the underlying action was willful and malicious and was done with a conscious disregard for appellants' rights and that Employers acted with the "intent to vex, annoy, harrass [*sic*] and injur [*sic*]" appellants, thus entitling them to punitive and exemplary damages in the sum of $5 million.

Appellants' second and third causes of action were based on the same conduct alleged in the first cause of action. In the second cause of action for intentional infliction of emotional distress, appellants alleged that the conduct described in the first cause of action, carried out over a two- and one-half year period, constituted outrageous conduct, which was not privileged and was "likely to cause [appellants] severe emotional distress and suffering." The severe emotional distress alleged was the same as that alleged in the first cause of action. They further alleged that Employers' conduct was intentional or done with reckless disregard of the probability of causing appellants severe emotional distress.

In the third cause of action, appellants alleged "EMPLOYERS knew or reasonably should have known that their actions and statements were likely to result in emotional harm, anguish and distress to [appellants]." The injury was the same as that alleged in the second cause of action with the addition of an allegation of physical injury.

counts and dismissed the action finding: "No violation of duty of carrier alleged or shown. Carrier appears to have defended and indemnified on a settlement within limits and notified plaintiffs of its [*sic*] rights to have own counsel where claim exceeds the limits. Carrier [is] not required to settle for policy limits where its best judgment is not to; here carrier later settled for a sum within the limits, thereby discharging its duties to plaintiff [*sic*]."

CONTENTIONS ON APPEAL

Appellants' contentions may be summarized as follows:

1. The first count in the complaint sets forth facts sufficient to state a cause of action for breach of the implied covenant of good faith and fair dealing and breach of the duty to defend. The trial court thus improperly sustained Employers' demurrer to the first count without leave to amend.

2. The second count pleads facts sufficient to state a cause of action for intentional infliction of emotional distress, and the trial court improperly sustained the demurrer to that cause of action without leave to amend.

3. The third count sets forth facts sufficient to state a cause of action for negligent infliction of emotional distress, and the trial court improperly sustained the demurrer to that count of the complaint without leave to amend.

4. Since the trial court improperly sustained demurrers to all three counts in the complaint without leave to amend, the action should not have been dismissed.

DISCUSSION

I

*The First Count of the Complaint Pleads Facts Which Could State a Cause of Action for Breach of the Insurer's Duty to Defend but Not for Breach of the Implied Covenant of Good Faith and Fair Dealing*

Appellants contend that the trial court erred in sustaining Employers' demurrer to the first count of their second amended complaint without leave to amend. Specifically, they argue that the allegations in the first count of the pleadings that the attorney retained by Employers advised appellants to retain independent counsel and that Employers' counsel did not represent appellants' interests in the settlement negotiations, as well as Employers' entire handling of the case for two and one-half years, state causes of action for breach of the implied covenant of good faith and fair dealing and breach

of the duty to defend. Regarding those allegations in the complaint as true,[3] we find appellants have pleaded facts which could state a cause of action for breach of the duty to defend if properly pleaded but have not stated a cause of action for breach of the covenant of good faith and fair dealing.[4]

A. *When a Conflict of Interest Between the Insurer and Insured Has Arisen, the Insured Is Entitled to Independent Counsel, and the Insurance Company's Duty to Defend Extends to Paying the Reasonable Value of Legal Services and Costs Performed by That Independent Counsel Selected by the Insured*

Appellants contend that they are entitled to reimbursement from Employers for the attorney's fees they incurred as a result of retaining independent counsel to represent their interests in the settlement of the underlying action. We agree. Employers contends that if the insurer duly notifies the insured, the insurer has no obligation to represent the insured through the settlement phase of the action. We find this contention to be without merit.

The attorney hired by the insurance company to defend in an action against the insured owes fiduciary duties to two clients: the insurer and the insured. (*Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 146 [65 Cal.Rptr. 406, 28 A.L.R.3d 368]; *Purdy* v. *Pacific Automobile Ins. Co.* (1984) 157 Cal.App.3d 59, 76 [203 Cal.Rptr. 524].) It is a well accepted and oft repeated principle that the attorney retained by the insurance company for the purpose of defending the insured under the insurance policy owes the same duties to the insured as if the insured had hired the attorney him or herself. It must be recognized, however, that "in reality, the insurer's attorneys may have closer ties with the insurer and a more compelling interest in protecting the insurer's position, whether or not it coincides with what is best for the insured." (*Purdy* v. *Pacific Automobile Ins. Co., supra,* 157 Cal.App.3d at p. 76.) This reality frequently gives rise to conflicts of interest between the insurer and its insured.

"Conflict of interest between jointly represented clients occurs whenever their common lawyer's representation of the one is rendered less

---

[3]On appeal from the sustaining of a demurrer without leave to amend and subsequent dismissal, the appellate court must regard the plaintiff's allegations as true. (*Hill* v. *City of Santa Barbara* (1961) 196 Cal.App.2d 580, 585 [16 Cal.Rptr. 686]; *Sacket* v. *Wyatt* (1973) 32 Cal.App.3d 592, 601 [108 Cal.Rptr. 219].)

[4]The scope of review of a judgment of dismissal following the sustaining of a demurrer without leave to amend is whether the trial court abused its discretion in sustaining the demurrer without leave to amend. Generally speaking, a trial court abuses its discretion when it sustains with prejudice a demurrer to a complaint, which, liberally construed, states a cause of action on any theory, or if it reasonably appears that the defect can be cured by amendment. (*Pactor Corp.* v. *Manpower, Inc.* (1967) 252 Cal.App.2d 1032, 1035 [60 Cal.Rptr. 878]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 844, p. 2449.)

effective by reason of his representation of the other." (*Spindle* v. *Chubb/ Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 713 [152 Cal.Rptr. 776].) Such a conflict is likely to arise in the insurance context in two situations: where coverage under the policy is disputed (*San Diego Navy Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 364 [208 Cal.Rptr. 494] (*Cumis*); *Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638 [39 Cal.Rptr. 731, 394 P.2d 571]) and where the claim against the insured is likely to result in a recovery in excess of the policy limits unless the insurer accepts a settlement offer within the policy limits. (*Purdy* v. *Pacific Automobile Ins. Co., supra,* 157 Cal.App.3d at p. 77; *Tomerlin* v. *Canadian Indemnity Co., supra,* 61 Cal.2d at p. 647.)

In the case at bar, Employers contends that a conflict of interest arose between itself and appellants during the settlement negotiations sometime after plaintiffs in the underlying action made a settlement offer at policy limits for $100,000. We find, however, that in a situation such as this, where there is no coverage dispute, and the demand against the policy and the settlement offer is within policy limits, no conflict of interest between the insured and insurer exists.

In this case, the record before us does not reveal whether there was any likelihood, should the underlying action have gone to trial, of a recovery in excess of the policy limits.[5] Thus, even though appellants may have been pressuring Employers to settle the case as soon as plaintiffs made a settlement offer within policy limits, there is nothing in the record to indicate that Employers' and appellants' interests had diverged at that point. Moreover, at oral argument, Employers failed to articulate any theory to convince us that there was any conflict of interest between the insured and insurer here. It alleged neither a failure to cooperate on appellants' part, nor an actual demand against the policy in excess of $100,000.

Thus, while Employers took the risk that its rejection of the $100,000 settlement offer could result in the case going to trial and Employers being held liable for an excess recovery as well as the amount due under the policy (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 15-16 [123 Cal.Rptr. 288, 538 P.2d 744] [insurer liable for recovery against insured in excess of policy limits when it previously rejected a reasonable settlement offer]; *Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 243 [178 Cal.Rptr. 343, 636 P.2d 32]), it was free to accept or reject any settlement offer within policy limits during the course of the

---

[5]Indeed, the record in this case does not even reveal what damages plaintiffs in the underlying action sought. It is therefore impossible to ascertain whether the $100,000 settlement offer was reasonable in light of a possibility of a recovery in excess of policy limits.

settlement negotiations. Since the insureds' only concern was to settle the action within policy limits, there could be no conflict of interest until such time as there was a claim against the insureds over $100,000.

▮▮▮ Employers' letter to appellants informing them of a conflict of interest and advising them to retain independent counsel to represent their interests in the settlement aspect of the case was therefore premature since no conflict had arisen. However, since Employers informed appellants of a conflict, and apparently acted under the misapprehension that a conflict existed, the absence of any conflict of interest in fact does not change the duties owed by Employers to its insureds in the conflict of interest situation. The rules concerning conflicts of interest between the insurer and its insured apply with the same force in this situation as in a case where there is an actual conflict.

We shall therefore hold Employers to the consequences of having erroneously determined a conflict of interest existed between itself and appellants.

▮▮▮ Once a conflict of interest arises, it is well established in California that the insurer may not compel the insured to surrender control of the litigation, and the insured is entitled to retain independent counsel to participate in and protect his/her interest in the underlying action. (*Tomerlin* v. *Canadian Indemnity Co.*, *supra*, 61 Cal.2d at pp. 647-648; *Purdy* v. *Pacific Automobile Ins. Co.*, *supra*, 157 Cal.App.3d at p. 76; *Cumis*, *supra*, 162 Cal.App.3d at p. 364.) Indeed, when such a conflict arises, the insurer's duty to defend requires it to notify the insured of that conflict.

When the insurer has properly appraised the insured of his/her right to independent counsel, it has still not yet fully met its duty to defend, however. "[I]n a conflict of interest situation, . . . the insurer's obligation to defend extends to paying the reasonable value of the legal services and costs performed by independent counsel, selected by the insured [citation]." (*Executive Aviation, Inc.* v. *National Ins. Underwriters* (1971) 16 Cal.App.3d 799, 810 [94 Cal.Rptr. 347]; *Cumis*, *supra*, 162 Cal.App.3d at p. 371; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 488, p. 2749.)

In *Cumis*, the insureds tendered the defense of an action seeking $750,000 general and $6.5 million punitive damages to their insurer, Cumis Insurance Society. Cumis accepted the defense and retained counsel to defend the action, but notified the insureds that it was reserving its right to deny coverage at a later date since the insureds' policy did not cover punitive damages. Pursuant to this letter, the insureds retained independent counsel and submitted a claim to Cumis for the fees and costs incurred for the indepen-

dent counsel. Cumis agreed to pay the attorney's fees and in fact paid two invoices for the independent counsel's services as cocounsel, but refused to make any additional payments. The trial court ruled that Cumis was required to pay the legal fees and costs incurred by the insureds as a result of hiring independent counsel, and the Court of Appeal of the Fourth Appellate District affirmed.

In holding that the insurance company was liable for the attorney's fees and costs of independent counsel hired by the insureds, the *Cumis* court relied on *Tomerlin,* declaring, "[a]lthough *Tomerlin* did not expressly state the insurer had to pay for the insured's independent counsel under such circumstances [where the insurer and insured have conflicting interests], this is necessarily implicit in the decision. If the insurer must pay for the cost of defense and, when a conflict exists, the insured may have control of the defense if he wishes, it follows the insurer must pay for such defense conducted by independent counsel." (*Cumis, supra,* 162 Cal.App.3d at p. 369.)[6]

Employers relies on *Lysick* v. *Walcom, supra,* 258 Cal.App.2d 136, for the propositions that the insurer is not obligated to represent the insured through the settlement phase of the action as long as it duly notifies the insured that it does not represent the insured's interests and that the insurer incurs no liability for the attorney's fees incurred by the insured when the insured hires independent counsel. The language Employers cites from *Lysick* in support of this argument, however, is taken out of context; and a reading of the case and an examination of the facts out of which the case arose reveal that *Lysick* clearly does not support Employers' position.

*Lysick* involved an action against the attorney (Walcom) hired by the insurance company to defend the insured in a wrongful death action. Plaintiffs in the underlying action sought $450,000; the insurance policy had a $10,000 liability limit; and the attorney for the insurer rejected a settlement

---

[6]*Previews, Inc.* v. *California Union Ins. Co.* (9th Cir. 1981) 640 F.2d 1026, a case applying California law, is also apposite. In that case, a class action was filed against Previews, the defense of which Previews tendered to its insurer, the California Union Insurance Company (California Union). California Union accepted the defense, but asserted that the $5,000 deductible in the insurance policy applied to each class member. Previews rejected California Union's defense of the action, retained its own counsel to defend the action, and then brought suit for indemnity against California Union. On appeal, the court upheld the district court's finding that "Previews had a right to reject Cal Union's defense and hire outside counsel because of a conflict of interest." (*Previews, Inc.* v. *California Union Ins. Co., supra,* 640 F.2d at p. 1028.) Applying California law, the Ninth Circuit declared, "in a conflict of interest situation, the insurer's desire to control exclusively the defense must yield to its obligation to defend the policyholder. Accordingly, the insurer's obligation to defend extends to paying the reasonable value of the legal services and costs performed by independent counsel selected by the insured." (*Ibid.*)

offer of $12,500 even though the insured had agreed to pay the $2,500 over the policy limit. The case went to trial, which resulted in a judgment for plaintiffs of $225,000. The insured assigned its rights against the insurer and Walcom to the plaintiffs in the underlying action, and plaintiffs compromised the claim against the insurer prior to trial. Plaintiffs' action for the balance due under the $225,000 judgment then proceeded only against Walcom in whose favor a jury verdict was rendered.

On appeal, the court affirmed. Citing Professor Keeton (*Liability Insurance and Responsibility for Settlement* (1954) 67 Harv.L.Rev. 1136, 1167-1171), the court noted that the duties of the attorney retained by the insurer to the insured are commensurate with the scope of the attorney's employment, and that "the parties may create a relationship under which the attorney has no duty to the insured in the matter of settlement." (*Lysick* v. *Walcom, supra,* 258 Cal.App.2d at pp. 149-150.) In such a situation, the attorney must make clear to the insured that he/she does not represent the insured's interests in the settlement.

The court then went on to declare that "where the attorney properly represents only the insurance company in the matter of settlement, it is his duty to protect the interests of the insurance company in that respect including protection against liability for failure to discharge its duties to the insured. In such a situation, if the attorney fails to give proper consideration to the interests of the insured in his recommendations with respect to the settlement of the case and the insurance company acts upon that recommendation causing loss to the insured, there is no cause of action against the attorney because he owes no duty in that respect to the insured. In that case the insured's cause of action is only against the insurance company." (*Id.,* at p. 150.)

Unlike *Lysick,* the case at bar is not an action by the insured against the attorney retained by the insurer. While *Lysick* contemplates the situation where the attorney represents only the insurer's interests in the settlement aspect of the case, it does not address the question of who must pay for the attorney's fees incurred as a result of hiring independent counsel to represent the insured's interests at the settlement. Moreover, in *Lysick,* there clearly existed a conflict of interest between the insured and insurer, and the court was careful to note the impossible ethical dilemma with which the attorney representing both insured and insurer in such a situation is faced.

A careful reading of *Lysick* reveals that the court was concerned not with the duty of the insurer to defend the insured in the underlying action, but rather, with the extent of the *attorney's* duties to his/her clients: the insurer and the insured. At issue was whether the insured, having incurred loss due

to the insurer following an improvident recommendation by the attorney, has a cause of action *against the attorney*. The court answered no; rather, the insured's *only recourse* in such a situation is against the insurance company.

The issue before us was not before the *Lysick* court and therefore Employers' reliance on *Lysick* in support of its position that it is not liable for attorney's fees incurred by appellants is misplaced. Based on *Lysick,* Employers was free to hire counsel to represent it, and not appellants, at the settlement phase. However, that did not relieve Employers of its duty to continue to defend appellants either by retaining independent counsel for them itself, or by undertaking the payment of fees incurred by appellants as a result of retaining cocounsel for the settlement negotiations.

Although in hindsight it appears that Employers adequately shielded appellants from liability by ultimately settling the underlying claim within policy limits, appellants incurred damages when they relied on Employers' urging and hired independent counsel to represent them in the settlement. To hold that Employers' conduct was anything but an abandonment of its insureds at a crucial stage of the litigation, and thus a failure to defend, is to ignore the gap in legal representation appellants suffered and which they had to fill by hiring their own attorney. Once Employers told appellants they were not represented by Employers' counsel in the settlement negotiations, nothing Employers could have done, short of paying the attorney's fees for the independent counsel, could remedy the breach of the duty to defend occasioned by the gap in representation of appellants' interests.

Based on Employers' abandonment of its insureds at the settlement, appellants were entitled to seek independent counsel at Employers' expense.[7]

---

[7]Despite its holding that the insured was not entitled to reasonable attorney's fees of its independent counsel, *Zieman Mfg. Co.* v. *St. Paul Fire & Marine Ins. Co.* (9th Cir. 1983) 724 F.2d 1343 (*Zieman*), a case applying California law, does not mandate a different result in this case. In *Zieman,* the insured brought suit against the insurer alleging the insurer breached its contractual duty to defend and breached the implied covenant of good faith in handling a products liability suit against the insured. *Zieman* also alleged the insurer was liable for the attorney's fees the insured had incurred in retaining independent counsel, even though the insurer had never indicated there was a conflict of interest between itself and Zieman. The district court granted summary judgment in favor of St. Paul Fire & Marine Insurance Company, and the Ninth Circuit affirmed.

In holding that Zieman was not entitled to attorney's fees for independent counsel, the district court carefully distinguished the situation in the case at bar, stating: "In this case the insured *accepted* the defense while being advised by very able counsel who never suggested the presence of a conflict of interest while associated with the Hillsinger firm." (Italics in original.) (*Zieman Mfg. Co.* v. *St. Paul Fire & Marine Ins. Co., supra,* 724 F.2d at p. 1346.)

*Zieman* is thus readily distinguishable from the case before us. Here, the attorney retained by Employers notified appellants that a conflict of interest existed between appellants' inter-

### B. *Appellants Have Not Pleaded Facts Sufficient to State a Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing*

In every insurance contract "there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement; . . . [this] implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose the duty; [and] in determining whether to settle the insurer must give the interests of the insured at least as much consideration as it gives to its own interests." (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173]; *Lysick* v. *Walcom, supra,* 258 Cal.App.2d at p. 148.)

It follows from this articulation of the implied covenant of good faith and fair dealing that to state a cause of action for the breach of that covenant, appellants must allege facts which tend to show that Employers in some way injured appellants' right to receive the benefits of the agreement. By alleging that Employers did not properly investigate the claim to determine its true value, appellants have only alleged a breach of the duty to defend. (Keeton, *Liability Insurance and Responsibility for Settlement, supra,* 67 Harv.L.Rev. at p. 1141.) Since Employers did settle the Matejka claim, it appears that there was no breach of the covenant of good faith and fair dealing for failure to settle. Hence, it is incumbent upon appellants to show in some other way how they were deprived of their right to receive the benefits of the agreement by Employers' actions and what benefits they did not receive.

The trial court thus properly sustained the demurrer to this cause of action, but should have given appellants leave to amend.

## II

### *The Second Count of the Complaint Does Not State a Cause of Action for Intentional Infliction of Emotional Distress*

Appellants assert that Employers' letters to them advising them to retain their own attorney to protect their interests in the settlement aspect of the case as well as Employers' failure to investigate the underlying claim while

---

ests and those of Employers no fewer than four times prior to the settlement. Moreover, he unequivocally advised appellants that he did not represent appellants' interests in the settlement aspect of the case, and thus appellants should seek to retain independent counsel to represent their interests in the settlement phase. Unlike *Zieman,* appellants here hired their own attorney to represent them in the settlement at the direction of their insurer.

valuing the claim below its true worth was outrageous conduct. Alternatively, appellants assert that Employers in this case should be held liable for damages for intentional infliction of emotional distress even in the absence of outrageous conduct based on public policy considerations.

We agree that Employers' conduct in this case was outrageous, however, we find that appellants have failed adequately to allege severe emotional distress sufficient to state a cause of action for intentional infliction of emotional distress.

■ "The elements of a prima facie case of intentional infliction of mental distress are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress. [Citations.]" (*Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 296 [131 Cal.Rptr. 547]; *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 946 [160 Cal.Rptr. 141, 603 P.2d 58].) In addition, "[w]hether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged." (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

■ Outrageous conduct has been defined as conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community" (*Cervantez* v. *J. C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975]) and "so extreme and outrageous 'as to go beyond all possible bonds [*sic*] of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 499, fn. 5 [86 Cal.Rptr. 88, 468 P.2d 216]; Rest.2d Torts, § 46, com. d.) As the court observed in *Newby* v. *Alto Riviera Apartments, supra,* 60 Cal.App.3d at page 297, "[b]ehavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress."

■ Employers' conduct of advising appellants that their interests were not represented by counsel hired by Employers in the settlement aspect of the case, and that they should retain their own counsel, without undertaking the payment of attorney's fees incurred as a result of hiring such independent counsel, was an abuse of a relation which gave Employers power to damage appellants' interest. Such conduct, by virtue of the position of pow-

er Employers enjoyed by controlling the litigation in the underlying action, and in light of Employers' duty to defend, was outrageous.

By informing appellants that counsel hired by Employers to defend appellants' interests did not represent appellants in a significant aspect of the case, Employers undermined the very security that the insureds paid for when they took out an insurance policy calling for the insurer to defend them in a lawsuit relating to the subject matter of the policy. While the insurer "is privileged, in pursuing its own economic interests, to assert in a permissible way its legal rights and to communicate its position in good faith to its insured even though it is substantially certain that in so doing emotional distress will be caused" (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 395), such a privilege does not insulate conduct which negates the insurer's duty to defend.

In view of the relation between the parties, Employers abused a position of power when it disclaimed any duty to represent appellants' interests at a crucial stage of the underlying action. Since appellants have adequately alleged outrageous conduct, we need not address their alternative contention that outrageous conduct need not be alleged.

Although the complaint adequately alleges outrageous conduct, appellants' cause of action for intentional infliction of emotional distress must still fall for failure to adequately plead severe emotional distress resulting from Employers' conduct.

As explained in the Restatement Second of Torts, section 46, comment j, "[c]omplete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." ■■■ After reviewing this discussion, the *Fletcher* court concluded that "[i]t appears, therefore, that in this context 'severe' means substantial or enduring as distinguished from trivial or transitory. Severe emotional distress means, then, emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 397.)

■■■ Although appellants alleged they suffered severe emotional distress, they failed to set forth any facts which indicate the nature or extent of any mental suffering incurred as a result of Employers' alleged outrageous conduct. Hence, the trial court did not err in sustaining the demurrer to this

count of appellants' complaint; however, appellants should have been given leave to amend.

### III

*The Third Count of the Complaint Fails to State a Cause of Action for Negligent Infliction of Emotional Distress*

California recognizes a right to recover damages in a negligence action for serious emotional distress. (*Molien* v. *Kaiser Foundation Hospital* (1980) 27 Cal.3d 916, 930 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]; *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 938 [122 Cal.Rptr. 470].) Actionable negligence is comprised of four elements: (1) a legal duty to use due care, (2) a breach of such legal duty, (3) damage or injury, and (4) the breach as the proximate or legal cause of the resulting damage or injury. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 488, p. 2749; *Jarchow* v. *Transamerica Title Ins. Co.*, *supra*, 48 Cal.App.3d at p. 938.)

While appellants in their second amended complaint adequately pleaded facts satisfying the first two and the fourth elements, the complaint falls short of alleging the third element. Appellants' cause of action for negligent infliction of emotional distress must therefore fall with the cause of action for intentional infliction of emotional distress since appellants failed to allege facts which indicate they suffered *severe* emotional distress. Just as with the cause of action for intentional infliction of emotional distress, "[s]erious emotional distress is an essential element of the cause of action for negligent infliction of emotional distress." (*Kelly* v. *General Telephone Co.* (1982) 136 Cal.App.3d 278, 286 [186 Cal.Rptr. 184].)

The third count of appellants' second amended complaint therefore fails to state a cause of action for negligent infliction of emotional distress, and the trial court correctly sustained the demurrer thereto. However, appellants should have been given leave to amend.

### IV

Appellants pleaded facts which could state a cause of action for breach of the duty to defend if the complaint were more artfully drafted. Appellants did not, however, state causes of action for breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, or negligent infliction of emotional distress. They should be given leave to amend to properly plead a cause of action for breach of the duty to defend

and to plead facts sufficient to state causes of action for breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress in a third amended and final complaint.

Because appellants were improperly denied leave to amend their second amended complaint, the trial court erred in dismissing the action against Employers.

The judgment is reversed.

Klein, P. J., concurred.

Arabian, J., concurred in the result.

Respondent's petition for a hearing by the Supreme Court was denied April 24, 1985.