[No. C000503. Third Dist. Nov. 29, 1988.]

FOREMOST INSURANCE CO., Plaintiff, Cross-defendant and Respondent, v.
DIANA WILKS, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Wohl, Cinnamon & Hagedorn, Alvin R. Wohl, Steven B. Eggleston, Thomas M. Mathiowetz and Lee Roy Pierce, Jr., for Defendant, Cross-complainant and Appellant.

Greve, Clifford, Diepenbrock & Paras, Maureen Falconer and Lawrence A. Wengel for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**CARR, J.**—The critical issue presented in this appeal is whether an insurer is required to furnish independent counsel selected by the insured and paid for by the insurer when the complaint against the insured seeks recovery of punitive damages as well as compensatory damages. ■■ ■■■ See *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].)[1]

■■ We hold that the mere allegation of punitive damages and a prayer therefor does not alone create a conflict between the insured and insurer and trigger the *Cumis* duty to provide the insured with independent counsel. ■■ ■■■ We shall therefore affirm the summary judgment and

---

[1] Plaintiff Foremost Insurance Company also urges that, in the absence of a published opinion by this court on the *Cumis* ruling that we reexamine and narrow or eliminate "insured-selected counsel in most insurance-funded defenses." Since the close of briefing, *United Pacific Ins. Co.* v. *Hall* (1988) 199 Cal.App.3d 551, 553 [245 Cal.Rptr. 99], which might be viewed by some as "narrowing" the *Cumis* holding, has been rendered by this court. However, we decline the invitation to eliminate the requirement of independent counsel, paid for by the insurer, in cases where a conflict of interest exists between the insurer and the insured and approve application of the *Cumis* holding in appropriate cases.

order of dismissal following the sustaining of a demurrer in favor of the insurer.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

In April 1985, Delmar Brey filed suit (the *Brey* action) against Diana Wilks (Wilks) for defamation. The complaint alleged Wilks published defamatory statements on various occasions between August 1984 and March 1985,[3] and sought injunctive relief, compensatory damages of $100,000 and punitive damages of $250,000.

Wilks tendered defense in the *Brey* action to Foremost Insurance Company (Foremost), which had issued to Wilks and her husband a commercial liability policy to insure against damages incurred by them in connection with their mobilehome business. The policy provided liability coverage up to $1 million for bodily injury, property damage and personal injury. The policy defined "personal injury" as "injury arising out of one or more of the following offenses committed during the policy period: "[¶] 3. [A] publication or utterance [¶] (a) of a libel or slander or other defamatory or disparaging material, . . ." Foremost accepted the defense and assigned the case to the law firm of Ericksen, Arbuthnot, Walsh, Paynter and Brown (the Ericksen firm). In a letter dated April 26, 1985 (the April 26 acceptance letter), Brian Emmert, a liability supervisor for Foremost, advised Wilks as follows: that she might wish to retain additional counsel "[w]hile the complaint was in your hand, I am sure you noted that this lawsuit is for libel and slander, injunctive relief, and punitive damages. Under the first cause of action, [Brey] is seeking the sum of $250,000 for exemplary and punitive damages. This arises out of the allegation that [Wilks] made libelous and slanderous publication, accusations and allegations with malice, and with wanton disregard for the welfare and reputation of [Brey], both individually and in his capacity as director of Golden State Mobile Home Owners League, Inc. *California courts have ruled that punitive or exemplary damages are not covered under liability insurance policies. The purpose of*

---

[2] We note the record contains only an order granting Foremost Insurance Company's motion for summary judgment. The order is nonappealable as it is not the final judgment. (*Snow v. A. H. Robins Co.* (1985) 165 Cal.App.3d 120, 125 [211 Cal.Rptr. 271].) Similarly, the record contains only the order sustaining without leave to amend Foremost's demurrer to Wilks's cross-complaint and lacks a judgment of dismissal. The order is nonappealable. (*Carley v. City of Santa Rosa* (1957) 154 Cal.App.2d 214 [315 P.2d 905].) In the interest of judicial economy, we shall deem both orders as final judgments. Counsel should be warned, however, that this court has adopted a future policy of dismissing such nonappealable orders. Two cardinal rules for appellate attorneys to ascertain are: (1) is the appeal timely and (2) is the order appealable.

[3] Specifically, Brey alleged Wilks defamed him by accusing him in a letter of stealing answering machine equipment and by orally repeating the statement at a meeting of the Sacramento County Commission on Aging.

*punitive damages, we are told, is to punish the defendants, and little would be gained by passing this punishment onto the defendant's insurance company. You may be called upon to pay these damages out of your own pocket, should it be determined that punitive damages apply in this lawsuit. Due to this, you may wish to engage your own personal attorney to protect your interest in the event of a judgment [of] punitive damages. The law firm assigned to your defense will cooperate with whomever you may select. . . ."*[4] (Italics added.)

On April 30, the Ericksen firm wrote to Wilks confirming the assignment of her defense, requesting Wilks's cooperation, and assuring Wilks the firm would do "everything in our power to represent your interests."

Wilks consulted with her own counsel at the law firm of Wohl, Cinnamon and Hagedorn (independent counsel). In May 1985, independent counsel wrote to the Ericksen firm, stating he had been retained as independent counsel by Wilks to defend her in the *Brey* action pursuant to *San Diego Federal Credit Union v. Cumis Ins. Society, Inc., supra,* 162 Cal.App.3d 358 (*Cumis*). Independent counsel delineated the firm's fees and requested reimbursement by Foremost. Charles Painter, an attorney for the Ericksen firm, wrote to independent counsel enclosing a copy of a proposed answer to Brey's complaint and apprising independent counsel that he (Painter) had scheduled a meeting with Wilks to discuss the case on May 7, 1985. Painter invited independent counsel to attend the meeting, noting, "It is my understanding, you are personal counsel for . . . Wilks and intend to represent her personally regarding any excess exposure or punitive damages. I look forward to working with you . . . and will be . . . happy to listen to all reasonable suggestions concerning how we should proceed." Painter also related a settlement demand from Brey requesting $25,000, plus attorney fees of $1,000 and a retraction of all allegedly defamatory statements.

Independent counsel notified Painter that he was unwilling to associate as counsel representing Wilks in the *Brey* action. Neither Wilks nor independent counsel attended the May 7 meeting.

On May 7, Painter wrote to independent counsel, stating: "I have been retained by [Wilks's] liability insurance carrier to represent and protect her interest in connection with this matter. Yesterday's meeting was scheduled for that purpose. Your refusal to meet with me demonstrates a total lack of

---

[4] Wilks calls this a "reservation of rights" letter "admitting its obligation to pay for the defense but denying any obligation whatever to pay the claims for punitive damages as *wilful misconduct*." (Italics added.) As explained *post*, because of Foremost's failure to deny coverage of any damages other than punitive damages, which it is by law prohibited from providing coverage for, the issue of whether there was a "reservation of rights" is more than semantical.

cooperation on the part of your law firm and [Wilks] and could have serious implications in connection with this matter. As I am sure you are aware, the *Cumis* decision requires me, in situations such as this, to 'explain to the insured and the insurer the full implications of joint representation in situations where the insurer has reserved its right to deny coverage.' I scheduled yesterday's meeting for, among other things, that purpose. [¶] I have discussed this matter with Foremost . . . and they have no objection to your representing their insured on the punitive damage or excess exposure and will allow you to control the litigation, but Foremost want[s] our firm to represent the interests of their insured and, therefore, respectfully request you associate our firm as attorneys of record. . . ."[5] Independent counsel replied on May 13, 1985: "I am in receipt of your letter dated May 7, 1985. You are advised that we will represent [Wilks's] interest in this matter and are of the opinion that we may not associate the insurers [*sic*] attorney in representing the insured as lead counsel. ([Citing *Cumis*].)

"Of course, as counsel for the insured, we will help the insured to comply with her obligations under the Foremost policy. This will include [Wilks's] duty to cooperate with Foremost Insurance Company to the extent required by law. (See *Cumis, supra.*) Thus, we will do no more for Foremost . . . than [Wilks] directs us to do and what the law requires us to do under the policy.

"We will forward pleadings, correspondence, documents, and deposition transcripts to the insurance company or their designated representative. Summaries of the depositions can be provided, but they will be written exclusively with the Wilks' rights and interests in mind. Therefore, if Foremost . . . wants evaluations, opinions, and so forth, we urge the company to retain separate counsel for such evaluations and opinions."

Foremost brought an action for declaratory relief against Wilks to determine its rights and obligations. Attaching copies of the complaint in the *Brey* action, the insurance policy, and the April 26 acceptance letter, Foremost prayed for declarations that it was not obligated to pay for Wilks's independent counsel, that it was entitled to reimbursement for sums already paid to independent counsel and that Foremost was to be in exclusive control of the litigation.

Wilks cross-complained for declaratory relief, compensatory and punitive damages and attorney fees, alleging that in the April 26 acceptance letter,

---

[5] The writer's expression of its duty in situations wherein "the insurer has reserved its right to deny coverage" is perhaps unfortunate language unless an estoppel, not urged in this case, is presented as the only noncoverage items under the policy in question under the factual situation were punitive damages, not legally allowed to be insured against, and damages in excess of $1 million, neither of which alone presents a *Cumis* situation.

Foremost had reserved its rights to disclaim coverage for punitive damages, thereby entitling Wilks to retain independent counsel at Foremost's expense. Asserting the right to control the defense, Wilks alleged Foremost acted in bad faith in refusing to relinquish control of the defense and thereby breached the contract.[6]

Foremost demurred to the first amended cross-complaint, asserting the cross-complaint was premature as the issues could not be resolved until Foremost's complaint was determined. After the demurrer was sustained with leave to amend, a second amended cross-complaint was filed, which essentially repeated the allegations of the prior complaint but with amplification.

Declaratory relief and compensatory and punitive damages from Foremost for breach of contract and violation of the implied covenant of good faith and fair dealing were sought. Foremost again demurred, asserting the facts alleged in the cross-complaint did not support Wilks's right to retain independent counsel at Foremost's expense. Foremost further filed a motion for summary judgment in support of which were submitted copies of the complaint in the *Brey* action, the insurance policy, correspondence between the Ericksen firm and independent counsel, and a declaration by Brian H. Emmert, liability supervisor for the Redlands branch of Foremost. He declared under penalty of perjury that Foremost did not reserve any rights with respect to coverage in its April 26 acceptance letter and there was no coverage dispute between Foremost and its insured, Wilks, under the policy in question. We note that the policy contained an exclusion for libel or slander made by the insured "with knowledge of the falsity thereof." ■ Foremost in its April 26 letter did not reserve the future right to deny coverage under this exclusion and thereby waived its right to assert the exclusion as a defense to coverage. (*Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 755 [161 Cal.Rptr. 322].)[7] At oral argument, Foremost again conceded its liability for compensatory damages for willful misconduct or malice on the part of its insured in this action.

The court sustained the demurrer without leave to amend and granted Foremost's summary judgment motion. The court ruled: "The Motion for Summary Judgment of FOREMOST INSURANCE COMPANY is granted as

---

[6] Wilks amended her cross-complaint as a matter of right on September 23, 1985.

[7] This exclusion provided "II (B) This insurance does not apply: . . . [¶] (4) To personal injury . . . arising out of libel or slander or the publication or utterance of defamatory or disparaging material . . . made by or at the direction of the insured *with knowledge of the falsity* thereof . . . ." If Foremost had reserved its rights under this exclusion, a conflict would have been presented. (See e.g., *Nike, Inc.* v. *Atlantic Mut. Ins. Co.* (N.D.Cal. 1983) 578 F.Supp. 948.)

prayed for in that [Wilks] is not entitled to retain independent counsel at the expense of FOREMOST INSURANCE COMPANY based upon the facts of the matter before the Court. The sole uninsured damage being claimed against her in underlying litigation . . . is for punitive damages. Such damages are not covered by insurance as a matter of public policy. California Civil Code, Section 1668; California Insurance Code, Section 533. FOREMOST INSURANCE COMPANY did not reserve its rights in any regard in providing Wilks with a defense and, as a result, this case does not fall within the holding of *San Diego Navy Fed. Credit Union* v. *Cumis Ins. Society, Inc.,* 162 Cal.App.3d 358, 208 Cal.Rptr. 494 (1984), and *McGee* v. *Superior Court,* 176 Cal.App.3d 221, 221 Cal.Rptr. 421 (1985); [¶] 2. The Court further orders that Foremost has no duty to pay for counsel independently chosen by Defendant Wilks with regard to her defense to [the *Brey* action] or any part thereof; . . ."

This appeal followed.

## DISCUSSION

## I

■ The standard of review on a summary judgment order is whether any genuine issues of material fact exist. (Code Civ. Proc., § 437c; *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842 [94 Cal.Rptr. 785, 484 P.2d 953].) ■ Similarly, when a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (See *Hill* v. *Miller* (1966) 64 Cal.2d 757, 759 [51 Cal.Rptr. 689, 415 P.2d 33].) When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment; if it can be, the trial court has abused discretion. (*Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 781 [180 Cal.Rptr. 657, 640 P.2d 793].)

■ On appeal, Wilks contends the trial court erred in granting summary judgment in favor of Foremost and in sustaining without leave to amend Foremost's demurrer to Wilks's cross-complaint. The basis of these assertions is that Foremost's April 26 acceptance letter constituted a reservation of rights evidencing a conflict of interest between the insured and insurer sufficient to invoke the right to independent counsel under the *Cumis* decision; that, in any event, there are triable issues of fact as to whether Foremost reserved its rights and whether there was a conflict of interest between the insurer and the insured. Wilks asks that we reverse the summary judgment and the judgment of dismissal following the order sustaining Foremost's demurrer and that we enter judgment in her favor on both Fore-

most's complaint and Wilks's cross-complaint. ■ ■■ ■■ ■■ Wilks is wrong both in her assertions and the affirmative relief sought in this court.[8]

■■ ■■ ■■ ■■ ■■ Viewing the allegations in the cross-complaint as true,[9] we find there is no conflict of interest in this case and affirm the judgment of dismissal following the sustaining of the demurrer without leave to amend. We find further there exists no triable issue of material fact and affirm the summary judgment on the complaint.

Relying heavily on the *Cumis* decision and ethical provisions from the American Bar Association Code of Professional Responsibility,[10] Wilks asserts that Foremost "reserved its rights" to dispute coverage in the April 26 acceptance letter thereby creating a conflict of interest between insurer and insured which entitled her to independent counsel at Foremost's expense. The argument is ill-founded. ■■ The insurer's duty to defend the insured obligates it to furnish independent counsel to represent the insured if a conflict of interest has arisen between the insurer and the insured. (*Cumis, supra,* 162 Cal.App.3d 358.)[11] ■■ A conflict of interest between jointly represented clients exists "whenever their common lawyer's representation of the one is rendered less effective by reason of his representation of the other." (*Spindle* v. *Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 713 [152 Cal.Rptr. 776].) ■■ "Such a conflict is likely to arise in the insurance context in two situations: [1] where coverage under the policy is disputed . . . and [2] where the claim against the insured is likely to result in a recovery in excess of the policy limits unless the insurer accepts a settlement offer within the policy limits." (*Bogard* v. *Employers Casualty Co.* (1985) 164 Cal.App.3d 602, 610 [210 Cal.Rptr. 578].) ■■ Moreover, if there is a coverage dispute and the insurer elects to defend the insured under a reservation of rights, the conflict created thereby may require the insurer to furnish independent counsel. (*Cumis, supra,* 162 Cal.App.3d at p. 364.) However, not every reservation of rights creates a conflict of interest; rather, the existence of a conflict depends upon the grounds on which the insurer is denying coverage. (*McGee* v. *Superior*

---

[8] This court has no jurisdiction to grant the relief sought by Wilks. Code of Civil Procedure, section 437c provides that summary judgment may be granted only "on motion." Absent a motion, ordering summary judgment denies the opposing party opportunity to allege additional facts justifying trial of factual issues, thereby depriving opposing party of his or her right to a fair trial. (*Dvorin* v. *Appellate Dept.* (1975) 15 Cal.3d 648 [125 Cal.Rptr. 771, 542 P.2d 1363].)

[9] On appeal from the sustaining of a demurrer without leave to amend and subsequent dismissal, the appellate court must regard the plaintiff's allegations as true. (*Sackett* v. *Wyatt* (1973) 32 Cal.App.3d 592, 601 [108 Cal.Rptr. 219].)

[10] Wilks cites the Preamble, Ethical Considerations EC 5-14, 5-15, 5-17, 5-22 and 5-23.

[11] We note the adoption, effective January 1, 1988, of Civil Code section 2860, dealing with *Cumis* counsel. (Stats. 1987, ch. 1498, § 4, No. 5 Deering's Adv. Legis. Service, pp. 5929-5930.) The statute was not in effect at the time of this action and the parties have made no argument it is applicable.

*Court* (1985) 176 Cal.App.3d 221, 226-227 [221 Cal.Rptr. 421].) If the reservation of rights arises because of coverage questions which depend upon the insured's own conduct, a conflict exists. (*Ibid.*)

On the other hand, where the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action, there is no conflict of interest requiring independent counsel. (*Native Sun Investment Group* v. *Ticor Title Ins. Co.* (1987) 189 Cal.App.3d 1265, 1277 [235 Cal.Rptr. 34]; *McGee* v. *Superior Court, supra,* 176 Cal.App.3d at pp. 227-228.)

█ In the present case, the trial court's finding that the April 26 acceptance letter did not create a reservation of rights was proper. Even assuming the April 26 acceptance letter could be construed as a reservation of rights by the insurer, there is no conflict of interest with the insured as the coverage dispute is unrelated to any issue being litigated in the *Brey* action. Under the policy issued to Wilks, Foremost is obligated to indemnify for damages up to $1 million sustained in a personal injury action, which is defined by the policy to include defamation actions. Foremost is prohibited from indemnifying Wilks from any punitive damages pursuant to Civil Code section 1668 and Insurance Code section 533. However, Foremost will be liable for indemnification of compensatory damages if the trier of fact in the *Brey* action finds Wilks defamed Brey regardless of whether her conduct was done with malice or reckless disregard for the truth. Contrary to Wilks's assertions, it is in Foremost's interest to vigorously defend the suit to avoid liability for indemnification of compensatory damages. Although the nature of Wilks's conduct as developed at trial will determine whether punitive damages are awarded, under the facts of this case and the coverage afforded Wilks under the policy, Foremost gains no benefit from pursuing a theory that Wilks acted with malice or reckless disregard for the truth. Ergo, there is no conflict of interest.

The decision in *Cumis* does not compel a contrary finding. *Cumis* does not hold that the mere existence of a punitive damages claim necessarily creates a conflict of interest. (See e.g., *Zieman Mfg. Co.* v. *St. Paul Fire & Marine Ins. Co.* (9th Cir. 1983) 724 F.2d 1343, 1346.) In *Cumis,* the insurer reserved its rights to deny coverage for damages in addition to punitive damages. The insureds tendered the defense of an action seeking $750,000 general and $6.5 million punitive damages to their insurer, Cumis Insurance Society. Cumis accepted the defense and retained counsel to defend the action, but notified the insureds that it was reserving its right to deny coverage at a later date because, in addition to its immunity for punitive damages, Cumis believed if the insureds were found liable for willful conduct or for breach of contract, the *Cumis* policies would not provide

coverage for compensatory damages. (162 Cal.App.3d at p. 362.) The insureds retained independent counsel and submitted a claim to Cumis for fees and costs for independent counsel. Cumis paid two invoices, but refused to make additional payments. After the trial court held Cumis was required to pay the legal fees and costs incurred by the insureds as a result of hiring independent counsel, the appellate court affirmed. The court found a conflict of interest existed between Cumis and the insureds because the reservation of rights on the ground of noncoverage was based on the nature of the insured's conduct, which as developed at trial, would affect the determination as to coverage. This is not the case presented in the instant appeal and to the extent that *Cumis* can or may be interpreted as holding a conflict requiring independent counsel exists solely from the fact that punitive damages are alleged and sought, we depart from the *Cumis* court and reject that holding.

Nor do we construe Foremost's letter of April 26 as informing Wilks that a conflict of interest existed, thereby requiring Foremost to pay for independent counsel despite the absence of an actual conflict, the situation extant in *Bogard* v. *Employers Casualty Co., supra,* 164 Cal.App.3d 602. In *Bogard,* the insurer informed the insured by letter that a conflict of interest existed between them and advised its insured to retain independent counsel to represent them in settlement negotiations of the case as the insurer would not so represent them. This letter was apparently prompted by a settlement demand from plaintiffs in the underlying personal injury action of $100,000, the policy limits. The case was in fact settled for $80,000. The insureds then filed suit against the insurer for breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress and negligent infliction of emotional distress. Among the damages sought were the fees and costs of retained independent counsel. The trial court's dismissal of the action upon the sustaining of a demurrer without leave to amend was reversed on appeal on the basis that the settlement offer was within policy limits and there could be no conflict until the demand exceeded the policy limits. The insurer's letter advising a conflict existed was therefore premature as no actual conflict had arisen. But because the insurer had withdrawn its representation of the insureds on the mistaken belief a conflict had arisen and had advised its insureds to retain independent counsel, the insurer was held to the same consequences as if there had been an actual conflict.

In the present case, Foremost informed Wilks that "California courts have ruled that punitive or exemplary damages are not covered under liability insurance policies. . . . You may be called upon to pay these damages out of your own pocket, should it be determined that punitive damages apply in this lawsuit. *Due to this, you may wish to engage your own personal attorney to protect your interest . . . .* The law firm assigned to

your defense will cooperate with whomever you may select." By this advice Foremost was merely apprising Wilks that it had no duty to indemnify for punitive damages rather than informing her there was a conflict of interest.

## DISPOSITION

The judgments are affirmed.

Evans, Acting P. J., and Blease, J., concurred.

A petition for a rehearing was denied December 29, 1988, and appellant's petition for review by the Supreme Court was denied February 15, 1989.