[No. B052267. Second Dist., Div. Five. Dec. 2, 1991.]

STEPHEN BLANCHARD et al., Plaintiffs and Appellants, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant and
Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, III and IV.

**COUNSEL**

Bostwick & Ackerman, Gary L. Bostwick and Lee B. Ackerman for Plaintiffs and Appellants.

Knapp, Petersen & Clarke, Andre E. Jardini, Horvitz & Levy, Barry R. Levy and Douglas G. Benedon for Defendant and Respondent.

## OPINION

ASHBY, J.—This is a "bad faith" action by an insured against its insurer for breach of contract and breach of the covenant of good faith and fair dealing. The trial court entered judgment in favor of defendant and respondent State Farm Fire and Casualty Company. Plaintiffs Stephen Blanchard and Blanchard Construction Company, Inc., appeal from the judgment.

The present action involves respondent's handling of three previous lawsuits brought against appellant.[1] Appellant was a general contractor who was insured by respondent under a multiperil insurance policy. As general contractor appellant supervised certain construction in a townhouse project in Alameda County known as Hyde Park. Pursuant to subcontracts with appellant, Precision Builders, Inc. (Precision) performed framing, siding and finished carpentry work, and Pacific Western Drywall (Pacific) performed drywall/sheetrock work at Hyde Park. Appellant withheld payment from Precision and Pacific on the ground their work was unsatisfactory.

Precision and Pacific sued appellant for money due under the subcontracts. (Hereinafter the subcontractor cases.) Respondent refused to defend or indemnify the subcontractor cases, on the ground those cases were not covered by appellant's insurance policy. The subcontractor cases were arbitrated. Appellant was represented by an attorney at appellant's expense. The arbitrator made awards in favor of Pacific and Precision.

Subsequently the Hyde Park Homeowners Association filed suit against appellant and others alleging various defects in construction. (The Hyde Park action.) Respondent *did* defend appellant in the Hyde Park action, subject to a reservation of rights that certain types of damages were not covered by the insurance policy. Appellant contended that respondent's reservation of rights created a conflict of interest which required respondent to pay for an additional independent counsel for appellant. (*Cumis* counsel.)[2] Respondent denied appellant's demand for *Cumis* counsel. The defense counsel selected by respondent eventually settled the Hyde Park case, with respondent contributing $218,000 on behalf of appellant. Appellant was not asked to contribute to the costs of defense and settlement of the Hyde Park action.

---

[1] Although Stephen Blanchard individually is a plaintiff and appellant in the present action, the previous lawsuits were against only Blanchard Construction Company, Inc., of which Stephen Blanchard is the sole shareholder. Hereinafter the singular "appellant" refers to the corporation.

[2] (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].)

In the present action appellants alleged respondent was obligated to defend and indemnify the subcontractor cases. The trial court summarily adjudicated that respondent had no obligation to defend or indemnify the subcontractor cases and there were no triable issues of material facts. (Code Civ. Proc., § 437c, subd. (f).)

In the present action appellants also alleged respondent owed a duty to provide *Cumis* counsel to appellant in the Hyde Park action. The trial court submitted this issue to a jury, which rendered a verdict in favor of respondent.

The main issues on this appeal are whether respondent had a duty to defend or indemnify the subcontractor actions or a duty to provide *Cumis* counsel in the Hyde Park action. We affirm, concluding that as a matter of law respondent owed neither duty.

I

THE SUBCONTRACTOR ACTIONS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

II

CUMIS COUNSEL

The Hyde Park Homeowners Association brought suit against appellant, among others, alleging various defects in construction. Appellant tendered to respondent the defense of the Hyde Park action.

Respondent *accepted* defense of the Hyde Park action but pointed out that certain definitions and exclusions in the insurance policy might limit the extent of damages which respondent would indemnify. "State Farm agree[d] to defend Blanchard Construction in the suit by the Homeowners Association, but reserve[d] the right to deny coverage . . . for damages excluded by" the policy language."

Appellant's broad form property damage endorsement excluded property damage for "that particular part of any property, not on premises owned by or rented to the insured . . . the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured." Thus, the insurance policy was not a performance bond or guarantee of the work of the general contractor or subcontractors. The contractor bears the risk of repairing or replacing faulty workmanship, while the insurer bears the risk of damage to the property of others.

*See footnote, *ante*, page 345.

(*Western Employers Ins. Co.* v. *Arciero & Sons, Inc.* (1983) 146 Cal.App.3d 1027, 1031-1032 [194 Cal.Rptr. 688].) If, for instance, faulty workmanship in the framing or drywall led to rainwater leaking in and damaging a homeowner's furnishings, appellant would be indemnified for the damage to the furnishings, but not for the cost of repairing or replacing the faulty workmanship. (*Central Mutual Ins. Co.* v. *Del Mar Beach Club Owners Assn.* (1981) 123 Cal.App.3d 916, 928-930 [176 Cal.Rptr. 895].)

Neither appellant nor appellant's own counsel disputed this interpretation of the damages payable under the policy. ▄▄▄ Nevertheless, appellant took the position that respondent's reservation of rights as to the extent of damages created a conflict of interest between respondent and appellant, which created a duty for respondent to pay for an additional counsel to act solely on appellant's behalf.

Respondent denied appellant's demand for independent counsel, concluding the reservation of rights did not create a conflict of interest requiring independent counsel. Respondent did, however, defend the Hyde Park action through attorneys selected by respondent at respondent's expense. Respondent settled the Hyde Park case. The expenses of defense and settlement of the Hyde Park case were paid by respondent, and appellant was never asked to contribute to these costs.[4]

Appellants' present action for breach of contract and breach of the covenant of good faith and fair dealing nevertheless asserts appellants are entitled to damages for respondent's failure to appoint independent counsel.[5] We conclude to the contrary that there was no evidence of a conflict of interest of the type requiring appointment of independent counsel.

In *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc., supra,* 162 Cal.App.3d 358, there was a possible conflict of interest between the insurer and the insured, because the underlying suit against the insured contained allegations in part that the conduct of the insured was intentional, conduct which would not be covered under the insurance policy. The appellate court perceived clearly divergent interests operating on the attorney selected by the insurer, since a finding of intentional conduct would be excluded from coverage while nonintentional conduct would be included. (*Id.* at pp. 364-365, 375.) In those circumstances the court held the insurer must pay the reasonable cost of hiring independent counsel for the insured. (*Id.* at p. 375.)

---

[4]In addition respondent fully compensated appellant's counsel for preliminary work done in the Hyde Park case before the attorneys selected by respondent were brought in.

[5]Appellant decided to have appellant's own counsel "monitor" the Hyde Park case, for which appellant paid $5,000.

■ Subsequent case law and statutory codification of *Cumis* have made clear, however, that not every reservation of rights creates a conflict of interest requiring appointment of independent counsel. It depends upon the nature of the coverage issue, as it relates to the issues in the underlying case. If the issue on which coverage turns is independent of the issues in the underlying case, *Cumis* counsel is not required. (*McGee* v. *Superior Court* (1985) 176 Cal.App.3d 221, 227 [221 Cal.Rptr. 421]; *Foremost Ins. Co.* v. *Wilks* (1988) 206 Cal.App.3d 251, 261 [253 Cal.Rptr. 596]; *Native Sun Investment Group* v. *Ticor Title Ins. Co.* (1987) 189 Cal.App.3d 1265, 1277 [235 Cal.Rptr. 34].) A conflict of interest does not arise unless the outcome of the coverage issue can be controlled by counsel first retained by the insurer for the defense of the underlying claim. (Civ. Code, § 2860, subd. (b).) The fact punitive damages are alleged does not itself create a conflict (Civ. Code, § 2860, subd. (b); *Foremost Ins. Co.* v. *Wilks, supra*) nor does a conflict exist solely because the insured is sued for an amount in excess of insurance policy limits. (Civ. Code, § 2860, subd. (b).)

■ In the Hyde Park case the attorneys selected by respondent faced no conflict concerning conduct of appellant. The coverage issue involved only damages. Insurance counsel had no incentive to attach liability to appellant. Respondent recognized its liability for certain damages flowing from appellant's liability; thus it was to the advantage of both appellant and respondent to minimize appellant's underlying liability. (*Foremost Ins. Co.* v. *Wilks, supra*, 206 Cal.App.3d 251 [allegations of punitive damages did not create conflict of interest, because insurer was liable for compensatory damages and thus had incentive to defend liability].)

Appellant produced no evidence to show in what specific way the defense attorney could have controlled the outcome of the damage issue to appellant's detriment, or had incentive to do so. Appellant merely urged that there was an unspecified *possibility* of a conflict.

Under these circumstances the trial court should have decided the *Cumis* issue as a matter of law and granted respondent's motions for nonsuit or directed verdict. The *Cumis* opinion was based heavily on the canons of ethics and the possibly conflicting choices confronting an attorney (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc., supra*, 162 Cal.App.3d at pp. 366-375.) ■ In the absence of dispute over some underlying fact, the existence of a conflict is a question of law for the trial judge to decide, not a jury question. (Cf. *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 875 [254 Cal.Rptr. 336, 765 P.2d 498] [in a malicious prosecution action the existence or absence of probable cause is a question of law to be decided by the court rather than the jury]; *United States*

*Fidelity & Guaranty Co.* v. *Superior Court* (1988) 204 Cal.App.3d 1513, 1525 [252 Cal.Rptr. 320] [statutory definition that *Cumis* conflict may exist does not preclude judicial determination of actual presence or absence of conflict].)

 Although a directed verdict would have been appropriate, the jury reached the same result compelled by law. (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 35 [221 Cal.Rptr. 171].)

### III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### V

The judgment is affirmed.

Turner, P. J., and Boren, J., concurred.

---

*See footnote, *ante*, page 345.