90 Cal.Rptr.2d 85 (1999)
76 Cal.App.4th 102
MIDIMAN et al., Plaintiffs and Appellants,
v.
FARMERS INSURANCE EXCHANGE, Defendant and Appellant.
No. B121020.
Court of Appeal, Second District, Division Four.
November 4, 1999.
As Modified December 3, 1999.
Ordered Not Officially Published May 10, 2000.[*]
*86 The Ford Law Firm, William H. Ford III, George H. Kim and Paul C. Cook, Los Angeles, for Plaintiffs and Appellants.
Tharpe & Howell, Timothy D. Lake, Stacey A. Miller; Pretty, Schroeder & Poplawski, Robert A. Schroeder, Los Angeles; Greines, Martin, Stein & Richland, Irving H. Greines, Robin Meadow and Robert A. Olson, Beverly Hills, for Defendant and Appellant.
CURRY, J.
An insured company contends it was forced to settle copyright and trademark infringement claims when its insurer refused to provide Cumis counsel.[1] The issue raised by this appeal is whether the insured was entitled to a presumption establishing *87 (1) that the underlying claim was legitimate and that the insured was liable in the amount which it agreed to pay in settlement and, at the same time, (2) that the insured had valid defenses to the underlying claim which it was precluded from presenting by the insurer's refusal to pay for independent counsel, justifying recovery of lost profits from its insurer. We conclude that the insured was entitled to no such contradictory and illogical presumption. We further conclude, in connection with the insurer's cross-appeal, that the trial court erred in ruling that Cumis counsel was required at the inception of the underlying litigation.

FACTUAL AND PROCEDURAL BACKGROUND
Appellant Midiman and its partners, appellants Timothy D. Ryan, Gordon T. Odell, and Thomas A. Turner, Jr., (collectively referred to herein as Midiman) were in the business of manufacturing electronic musical devices and accessories, among which was a product known as the "MIDI GMan."[2]

The Roland Complaint
In September of 1996, Roland Corporation U.S. (Roland), filed a complaint in federal court, contending that Midiman and codefendants Dream S.A., its successor Atmel Corporation, and Crystal Semiconductor infringed copyrights and trademarks associated with Roland's "Sound Canvas" line of products, and engaged in unfair business practices under Business and Professions Code section 17200. Concerning the copyright infringement, the complaint alleged that Dream used a digital sampler to record Roland's copyrighted sounds; Crystal bought those sounds from Dream and manufactured a computer chip or set of chips incorporating the sounds; and Midiman bought the infringing chips and incorporated them into its "MIDI GMan" for sale to the general public. Concerning the trademark infringement, the complaint alleged that Midiman caused its MIDI GMan to be "falsely advertised" as a sound module "`featuring Roland-licensed sounds'" and as being "`Roland Sound Canvas Compatible,'" and orally communicated to potential customers that the product contained "`Roland sounds.'" Roland sought a preliminary injunction against all the named defendants, seeking to restrain all further advertisement and sale of the MIDI GMan and the chip sets.

The Insurance Policy
At the time, Midiman was insured under a commercial general liability policy issued by Farmers Insurance Exchange. The policy stated: "We [Farmers] will pay those sums that the insured becomes legally obligated to pay as damages because of `personal injury' or `advertising injury' to which this coverage part applies." The policy expressly applied to "`[advertising injury' caused by an offense committed in the course of advertising your goods, products or services...." The policy defined "advertising injury" to include "injury arising out of one or more of the following offenses: [¶] a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; [¶] ... [¶] c. Misappropriation of advertising ideas or style of doing business; or [11] d. Infringement of copyright, title or slogan."

Midiman's Tender of Defense and Demand for Cumis Counsel
Midiman tendered the Roland complaint to Farmers, which agreed to provide a defense through the firm of Cooper, Kardaras & Scharf. At the same time, Farmers reserved the right to seek reimbursement of any money or judgment paid on Midiman's behalf in connection with uncovered *88 claims not arising from advertising injury and defense costs related to any such uncovered damages. Farmers based its decision on the following understanding of the essential facts: "[Roland] alleges defendant Atmel-Dream re-recorded and thereby copied their Sound Recording for use on competing products. The Atmel-Dream representative admitted that they had copied the Sound Recordings utilizing a digital sampler."[3]
Midiman demanded independent Cumis counsel of its own choosing, which Farmers refused to provide. A coverage attorney retained by Farmers prepared a series of detailed letters explaining why, in Farmers' view, despite the potential for noncoverage, Cumis counsel was not required. Concerning the alleged conflict of interest, the attorney stated: "Roland alleges that [Midiman] is marketing a product that competes with its products and which contains a chip that contains the pirated sounds. Roland also alleges that [Midiman] advertise[s] their product as containing `Roland-licensed sounds' and as being `Roland Sound Canvas compatible.' [¶] The key issues in Roland's lawsuit is whether the particular sounds are even copyrightable. If they are not, then Roland loses. If the sounds are copyrightable, the next issue is whether Roland engaged in conduct which would prevent it from enforcing its copyright as against [Midiman] or would require Roland to license the sounds to [Midiman]." The attorney further stated: "If Midiman's defenses are unsuccessful, then [Farmers] will have to pay the damages caused by infringements committed in the course of Midiman advertising its goods, products or services. Since [Farmers] will have to pay the damages caused by infringements committed in the course of Midiman advertising its goods, products or services, it would not be in Farmers' interests for appointed counsel to let Midiman lose." The attorney's letters made clear that "Farmers is not saying it will not pay a judgment if a jury finds Midiman's conduct was intentional or willful, rather than merely negligent." (Original italics.) Concerning the possibility that Farmers might seek reimbursement for legal services, "Mr. Cooper, on behalf of Cooper, Kardaras & Scharf, agreed that to the extent [Farmers] might seek reimbursement from Midiman for sums Farmers paid his firm, his firm would waive its fees so there would be nothing for which Farmers could seek reimbursement."
In response, Midiman's selected counsel from the firm of Irell & Manella submitted a letter stating why, in his client's belief, a conflict existed: "Farmers contends that its policy does not provide indemnity to Midiman unless the damages sought by Roland resulted from `advertising activities.' Disregarding our disagreement with this overly narrow interpretation of the Farmers policy, there are ample allegations of alleged copyright infringement in Midiman's advertising activities. For example, Roland alleges that the print advertisements for Midiman's products improperly exploited Roland's copyright and contained statements to the effect that the Midiman product was `Roland compatible.' Midiman also allegedly reproduced the copyrighted sounds at trade shows and other demonstrations to prospective customers. If Roland's charges arose from these advertising activities, even Farmers would concede that the damages are covered by its policy. If Roland's damages were not caused by these advertising activities, then it is apparently [Farmers'] position that its policy will not cover the loss. The counsel retained to conduct the defense can direct the discovery and the evidence so as to emphasize or minimize the significance of Midiman's advertising activities as to any damages awarded to Roland for copyright infringement. It is difficult to imagine a clearer instance *89 where `the outcome of [the] coverage issues can be controlled by counsel first retained by the insurer for the defense of the claim.' Civ.Code § 2860(b). This is most certainly a proper case demanding the appointment of independent counsel."

Midiman's Settlement
Rather than accept the offered representation by Cooper, Kardaras & Scharf, Midiman decided to proceed on its own. Represented by counsel, it quickly settled with Roland prior to the hearing on the preliminary injunction, agreeing to stop all use of the offending chip and all manufacture and sale of the MIDI GMan. It further assigned to Roland 10 percent of anything it recovers in its suit against Farmers.[4] It did not pay any cash to Roland.

Midiman's Complaint
After settling with Roland, Midiman brought suit against Farmers asserting claims for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing. Midiman's theory was that it had equitable defenses to the Roland complaint which it was unable to put forth because it "was not financially able to mount a defense to an extended and complex litigation with Roland, one of the world's largest manufacturers of electronic musical equipment" and was unwilling to accept Farmers' offer of "conflicted" counsel. The complaint alleged that Farmers breached the implied covenant by, among other things, "unreasonably placing its own financial interests in the cost of the defense ahead of [Midiman's] interest in a competent and unconflicted defense" and that as a result, Midiman was entitled to recover "the value of all consideration provided by Midiman in settlement of the Roland action," (italics omitted) which, it contended, included "lost future profits" attributable to the MIDI GMan.

Motions for Summary Adjudication
Farmers moved for summary adjudication on the causes of action for breach of contract and breach of implied covenant, arguing that the claims were barred by breaches of the "`cooperation,'" "`no action,'" and "`voluntary payment'" clauses in the policy because of Midiman's "unilateral[ ] and voluntary]" settlement of the Roland action. Midiman filed a cross-motion for summary adjudication on the first cause of action for declaratory relief (and on a corresponding affirmative defense in Farmers' answer). The court granted Midiman's motion, ruling that Farmers had a duty to supply Cumis counsel to Midiman because "Farmers' reservation of rights to deny coverage ... created conflicts of interest between Farmers and Midiman, and the outcome of the coverage issues could be controlled by counsel first retained by Farmers to defend Midiman in the Roland action." (Italics omitted.) At the same time, the court denied Farmers' motion for summary adjudication, concluding that "Midiman was not contractually obligated to cooperate with Farmers after Farmers breached its duty to provide independent counsel" and "Midiman's settlement of the Roland action did not violate the cooperation clause of the Farmers policy in view of Farmers' breach of its duty to provide independent counsel." (Italics omitted.)
Farmers also moved for summary adjudication on the issue of whether the damages claimed by Midiman were "illusory." *90 Midiman argued in opposition that it had the right to continue production of the MIDI GMan under a license by "conduct or estoppel" or as the result of "laches." Specifically, Midiman contended that the facts would have shown that it had displayed a prototype of the MIDI GMan at a trade show in January 1996. A Roland representative saw and heard the product. Rather than demand that Midiman cease production, Roland instead instructed Midiman on how to correctly display its trademark on the front of the unit. The motion for summary adjudication was denied.

Motions in Limine
Prior to trial, Farmers moved in limine to exclude evidence of damages because the presumption of liability discussed in Isaacson v. California Ins. Guarantee Assn. (1988) 44 Cal.3d 775, 244 Cal.Rptr. 655, 750 P.2d 297, meant that Midiman's liability to Roland on the underlying copyright/trademark infringement claim must be presumed. Farmers contended that it necessarily followed from the presumption that Midiman suffered no damages due to its inability to produce the MIDI GMan. Farmers additionally moved for an order bifurcating the issues pertaining to the equitable defenses Midiman allegedly had to the Roland complaint, and directing that such issues be tried to the court.
On the first motion, the court ruled that "[Midiman] if they choose to simply rely on [the Isaacson] presumption to show liability to make them able to be reimbursed by [Farmers], ... as a matter of law their damages cannot be the lost profits connected with the production of something that they were infringing the copyright of in the first place. [¶] If [Midiman] chooses not to rely on this presumption, then [Midiman] may choose to proceed and prove that Midiman had a right to produce these items." On the second motion, the court ruled that "[Midiman] would be restricted in making [its] presentation [of] the equitable defenses that they have asserted of laches and equitable estoppel ... those defenses would be presented in a court trial prior to the jury trial."[5] At that point, counsel for Midiman stated: "[W]e have no case at all if that would be your ruling."
At a later hearing, the court ruled that breach of contract damages could include reimbursement to Midiman for the value of settlement, including lost profits. Counsel for Midiman stated that "since we seem to be earmarked for a bench trial on the estoppel issue ... we will probably not pursue lost profits at this time ... we are not going with the trial of the equitable issues. We are simply going to try defense fees, emotional distress and punitive damages. But I don't want to have a bench trial because I think it is the wrong forum, and we are very committed to that notion." Counsel further explained: "As I understand the rulings, we are forced to, `elect' a word fashioned by the defendants and which is now part of your ruling, and we are forced to elect whether we want the presumption or not. We do. And we think we are presumed to be liable. And we do not intend to prove our own liability...." The court responded: "Once you [are] presume[d] to be liable in tort, as I have ruled, your damages in settlement for future production of this product are going to be zero...."
The parties stipulated that Midiman incurred $50,000 in attorney fees in defending and settling the Roland action, and that judgment could be entered consistent with the stipulation and the court's prior legal rulings, as outlined above. The parties *91 then appealed, Midiman from the trial court's ruling concerning the interpretation of the presumption outlined in Isaacson, and Farmers from the ruling on summary adjudication that it breached its duty to provide Cumis counsel.

DISCUSSION

I
It has long been the rule that where an insurer improperly refuses to defend its insured and the case proceeds to judgment, the judgment conclusively establishes both the liability of the insured and the amount of the liability. (Lamb v. Belt Casualty Co. (1935) 3 Cal.App.2d 624, 631, 40 P.2d 311.) The insurer who wrongly refuses to defend an action "is bound by the result of a litigation to which such other is a party, provided he had notice of the suit and an opportunity to control and manage it. [Citations.]" (Ibid., italics added.) In that situation, "[t]he judgment recovered ... is the mode by which the insured proves to the insurer that the intrinsic character of the accident was such that he was liable for the consequences of it, and the judgment is conclusive evidence that the insured was liable, and to the extent of the amount of the judgment. [Citations.]" (Ibid., italics added.)
The rule is different when the underlying case settles: "[W]here there is no trial and no judgment establishing the liability of the insured, but a settlement of the litigation has been made, the question whether the liability of the insured was one which the contract of insurance covered is still open, as is also the question as to the fact of liability and the extent thereof, and these questions may be litigated and determined in the action brought by the insured to recover the amount so paid in settlement. The settlement, or a judgment rendered upon a stipulation of such a settlement, becomes presumptive evidence only of the liability of the insured and the amount thereof, which presumption is subject to being overcome by proof on the part of the insurer. [Citations.]" (Lamb v. Belt Casualty Co., supra, 3 Cal.App.2d at pp. 631-632, 40 P.2d 311, italics added.)
In Isaacson v. California Ins. Guarantee Assn., supra, 44 Cal.3d 775, 244 Cal. Rptr. 655, 750 P.2d 297, the Supreme Court acknowledged this rule and restated it as follows: "[I]f an insurer wrongfully fails to provide coverage or a defense, and the insured then settles the claim, the insured is given the benefit of an evidentiary presumption. In a later action against the insurer for reimbursement based on a breach of its contractual duty to defend the action, a reasonable settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of such liability. [Citations.] [¶] ... [I]f the insured, after [improper denial of coverage or refusal to defend on a covered claim], pays an adverse judgment, or contributes a reasonable amount in settlement of the claim, the insured has a cause of action against [the insurer] for reimbursement. In such a case, a reasonable settlement made by the insured with the third party claimant raises a presumption that the insured was liable in the amount of the settlement...." (44 Cal.3d at pp. 791-792, 244 Cal.Rptr. 655, 750 P.2d 297.) According to the court, the presumption operates "where the insurer has wrongfully refused to cover or defend a claim, leaving the insured to mount his own defense or suffer a default. In order to recover reimbursement from the insurer, the insured must demonstrate that the claim was covered under the policy in question, or that the insurer breached its duty to defend. Once a breach of contract is proved, the insured's act of settling the claim is said to raise the presumption that the third party's claim against him was legitimate, and that he was liable in the amount which he agreed to pay in settlement. *92 [Citation.]" (Id. at pp. 793-794, 244 Cal.Rptr. 655, 750 P.2d 297.)[6]
The Isaacson presumption was further refined in Xebec Development Partners, Ltd. v. National Union Fire Ins. Co. (1993) 12 Cal.App.4th 501, 15 Cal.Rptr.2d 726 and Pruyn v. Agricultural Ins. Co. (1995) 36 Cal.App.4th 500, 42 Cal.Rptr.2d 295. In Xebec, the court held that the presumption is one affecting the burden of proof (as opposed to the burden of producing evidence) and that the insured bears the burden of proving three foundational facts before the presumption comes into play: "(1) [that the settlement] was occasioned by a breach of the insurance contract by [the insurer], (2) [that it] was valid with respect to [the insurer], and (3) [that it] was reasonable in the sense that it reflected an informed and good faith effort by the settling parties to reconcile their presumably differing views as to the relative strengths of their respective claims and defenses." (12 Cal.App.4th at p. 545, 15 Cal.Rptr.2d 726, original italics.)
The court in Pruyn described the foundational facts somewhat differently. It stated that to establish a prima facie case for the presumption, the insured should be required to prove: "(1) the insurer wrongfully failed or refused to provide coverage or a defense, (2) the insured thereafter entered into a settlement of the litigation which was (3) reasonable in the sense that it reflected an informed and good faith effort by the insured to resolve the claim. [Citations.]" (36 Cal.App.4th at p. 528, 42 Cal.Rptr.2d 295, fn. omitted.)
The parties do not dispute that if the trial court's ruling on Farmers' breach of duty to supply Cumis counsel was correct (a matter discussed in part III of this opinion), Midiman could establish that Farmers wrongfully failed to provide Cumis counsel[7] and that Midiman entered into a settlement with Roland. As far as the third factor is concerned, Midiman's position, as we understand it, is that if Farmers breached a duty to provide independent Cumis counsel, Midiman was entitled to a presumption both that the settlement *93 with Roland by which it agreed to refrain from further manufacture of the MIDI GMan in return for Roland's agreement to forego monetary recovery was reasonable because it was liable to Roland and that, at the same time, the settlement was a source of uncompensated lost profits because it was not liable to Roland. Midiman argues that we should interpret the presumption in such a way that it can be "presumed liable" yet not "actually liable" in the underlying action.
Farmers' position is this: either the settlement was reasonable or it was unreasonable. If unreasonable, then there is no presumption  and no damages since Midiman conceded it could not go forward with its claim against Farmers without the assistance of the presumption. If it was reasonable, then Midiman is entitled to a presumption that, in the words of the Supreme Court, "the third party's claim against [it] was legitimate, and that [it] was liable in the amount which [it] agreed to pay in settlement. [Citation.]" (Isaacson v. California Ins. Guarantee Assn., supra, 44 Cal.3d at pp. 793-794, 244 Cal. Rptr. 655, 750 P.2d 297.) In that case, however, the presumption that Roland's trademark/copyright claim was "legitimate" or that Midiman was "liabl[e] on the underlying claim" (id. at p. 791, 244 Cal. Rptr. 655, 750 P.2d 297), necessarily precludes any claim for compensation for giving up its "right" to manufacture the MIDI GMan. In other words, if Roland's claim was legitimate and Midiman was liable on Roland's claim, then Midiman had no right to manufacture the device, and is entitled to zero compensation for giving it up.
Midiman argues that this straightforward interpretation results in "an unwarranted windfall to the wrongfully nondefending insurer" and that "[t]he insurer would be in a better position by refusing the defense than by undertaking its contractual obligation to defend." We fail to see why this is so. An insurer who wrongfully refuses to defend is required to reimburse the insured for its reasonable defense costs. (Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654, 659, 328 P.2d 198.) In addition, in the subsequent coverage litigation, it will be bound by all factual and legal determinations made in the underlying action (Clemmer v. Hartford Insurance Co. (1978) 22 Cal.3d 865, 884, 151 Cal.Rptr. 285, 587 P.2d 1098; Schaefer/Karpf Productions v. CNA Ins. Companies (1998) 64 Cal.App.4th 1306, 1313, 76 Cal.Rptr.2d 42), and exposed to liability for emotional distress and other tort damages (Campbell v. Superior Court (1996) 44 Cal.App.4th 1308, 1319-1321, 52 Cal.Rptr.2d 385; see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 1998) ¶¶ 7:701-7:702, p. 756).
Moreover, the "unwarranted windfall" argument cuts both ways. The underlying complaint contained a number of claims, but only that portion of Roland's damages attributable to "advertising injury" was arguably covered. Under current law, Farmers was bound to defend the entire action and hope that when it concluded, Midiman had the wherewithal to reimburse it for the expense of defending the noncovered claims. As the Supreme Court recently stated in Buss v. Superior Court (1997) 16 Cal.4th 35, 51-52, 65 Cal.Rptr.2d 366, 939 P.2d 766: "With regard to defense costs for these claims, the insurer has not been paid premiums by the insured. It did not bargain to bear these costs.... Even if the policy's language were unclear, the hypothetical insured could not have an objectively reasonable expectation that it was entitled to what would in fact be a windfall. [Citations.]"
Midiman attempts to analogize its situation to that of the plaintiff in Pruyn v. Agricultural Ins. Co., supra, 36 Cal. App.4th 500, 42 Cal.Rptr.2d 295. In the underlying action at issue there, a homeowner sued her former homeowner's association, and the association's insurers refused to provide a defense of any kind. The association entered into a settlement agreement in which it stipulated to a judgment *94 in the amount of $650,000 and gave the plaintiff an assignment of its rights against its insurers. The plaintiff/homeowner agreed not to execute on the judgment against the association, and then brought an action against the association's insurers. In reversing the trial court's dismissal of the claims, the court concluded: "Merely because plaintiffs complaint is based upon a judgment which was entered pursuant to a stipulation and was accompanied by a covenant not to execute, it does not follow that the defendant insurers were entitled to the dismissal granted by the trial court. [¶] ... While the fact that a covenant not to execute was given to [the insured] might bear circumstantially upon the validity or bona fides of the settlement, its presence can hardly make the judgment disappear. The critical question will still remain: was the settlement reasonable and free of fraud and collusion?" (36 Cal.App.4th at p. 522, 42 Cal.Rptr.2d 295.) The court went on to hold that, assuming the plaintiff established the three foundational facts outlined above, she would shift to the insurer the burden of proving that the settlement was collusive. (Id. at p. 528, fn. 25, 42 Cal.Rptr.2d 295.)
We take Midiman's point to be that under Pruyn, even a settlement which looks illusory on its face can be the basis for a judgment against the insurance company which wrongfully refuses to defend. We read the case differently. The compensation sought by the plaintiff homeowner in Pruyn did not require the court to both presume the association's liability and allow plaintiff to recover based on its nonliability, as Midiman seeks here. The basic problem facing Midiman is that the presumption on which it seeks to rely has no real relevance to its theory of recovery. Midiman is not contending that it was liable to the underlying plaintiff and paid reasonable compensation to it, as were the plaintiffs in Lamb, Xebec, and Pruyn. In those cases, when the plaintiffs argued that the settlements were "reasonable," they meant that the insurers could have achieved no better result had they been involved in the defense. The presumption precluded the insurers from arguing in a later action for reimbursement that the defense was mishandled and that actual liability would have been much less had the case been properly defended. Here, in contrast, Midiman's position is that it was not liable to Roland, but could not afford to mount a defense  in other words, that the settlement was only reasonable in the sense that lack of monetary resources left it with no choice but to capitulate to a meritless claim. Midiman's theory of recovery required it to establish that had Farmers provided a defense, the outcome would have been more favorable  just the type of evidence the Isaacson presumption was meant to preclude. In this situation, the authorities it cites and the presumption on which it seeks to rely are of no assistance to it.
Nor are we aware of any presumption that would assist a plaintiff in this type of case. This court recently held in Amato v. Mercury Casualty Co. (1997) 53 Cal. App.4th 825, 61 Cal.Rptr.2d 909, that where an automobile liability insurer breaches a duty to defend and a default judgment is entered against the insured "[b]ecause he had no funds to obtain other counsel to defend the underlying lawsuit," the insurer is liable for the entire judgment. (53 Cal.App.4th at p. 828, 61 Cal. Rptr.2d 909.) That was an extension of the "`general rule'" that "`"an insurer who has had an opportunity to defend is bound by the judgment against its insured as to all issues which were litigated in the action against the insured."' [Citation.]" (Id. at p. 837, 61 Cal.Rptr.2d 909, quoting Clemmer v. Hartford Insurance Co., supra, 22 Cal.3d at p. 884, 151 Cal.Rptr. 285, 587 P.2d 1098; accord, Lamb v. Belt Casualty Co., supra, 3 Cal.App.2d at p. 631, 40 P.2d 311.) As we noted in Amato, "[a] default judgment for personal injury results only after the court conducts a hearing to consider the plaintiffs evidence and to award such damages as that evidence *95 shows to be just" and is "the product of a sufficient `significant independent adjudicatory action by the court, thus mitigating the risk of a fraudulent or collusive settlement between an insured and the claimant.'" (Amato v. Mercury Casualty Co., supra, 53 Cal.App.4th at p. 838, 61 Cal. Rptr.2d 909.) For that reason, we did not require the insured to conduct "a `trial within a trial,'" and "prove that if [the insurer] had defended him, the amount of the underlying judgment would have been smaller...." (Id. at p. 835, 61 Cal. Rptr.2d 909.)
The settlement here was reached before anything was adjudicated, and the federal courts have, as far as we are aware, upheld Roland's copyright and trademark claims against defenses similar to those that Midiman intended to mount. Thus, Midiman's only avenue of relief in the present action was to establish by a preponderance of the evidence every fact needed to establish its damages, including that it entered into a settlement because it "had no funds to obtain other counsel" and that had the Roland copyright and trademark infringement case proceeded to litigation, Midiman would have prevailed. Farmers would then have had the task of proving that Midiman would have done no better had a defense been provided and that what Midiman gave up  the possibility of successfully defending the lawsuit and continuing to manufacture its product  was equivalent to what it gained  the risk that Roland would prevail and win a large monetary judgment for past infringement.[8]

II
The trial court correctly ruled that the Isaacson presumption, if applied, would result in zero damages for Midiman. The court presented Midiman with the opportunity to go forward with affirmative evidence that it would have prevailed in the Roland action. Counsel initially rejected the notion of a trial within a trial, insisting  based on its misunderstanding of the Isaacson presumption  that it need do nothing more than show that the settlement was reasonable. Counsel took the position that Midiman should be entitled to prove the "value in the consideration given away ... without any consideration of [the merits of] the Roland ... case" and asserted that Midiman had "no case at all" without the presumption. At a later hearing, when the court made clear that it would be deciding the merits of Midiman's equitable defenses to Roland's copyright and trademark claims, counsel refused to go forward with the lost profit claim.
We need not resolve whether or not the trial court was correct to take the equitable issues from the jury. Assuming, without determining, that the court erred in bifurcating the issues and directing Midiman to establish its equitable defenses to the underlying claim to the court's satisfaction, Midiman cites no authority which indicates that the proper procedure for a plaintiff where the trial court erroneously insists on a court trial is to stipulate to a dismissal and seek an immediate appeal. In Interinsurance Exchange v. Savior (1975) 51 Cal.App.3d 691, 124 Cal.Rptr. 239, the appellate court held that even though the trial court erred in depriving the plaintiff of a jury trial, the error was not prejudicial because the plaintiff refused to go forward with evidence or present an offer of proof.
*96 The same reasoning applies here. Counsel indicated that Midiman could not establish lost profits without the benefit of the Isaacson presumption which, as we have discussed, would abrogate the claim for lost profits if applied. Thus, any error of the trial court in depriving Midiman of a jury trial was not prejudicial.
Moreover, stipulated dismissals are not normally appealable. (Tudor Ranches, Inc. v. State Comp. Ins. Fund (1998) 65 Cal.App.4th 1422, 1428, 77 Cal. Rptr.2d 574.) An exception is recognized where "consent was merely given to facilitate an appeal following adverse determination of a critical issue...." (Building Industry Assn. v. City of Camarillo (1986) 41 Cal.3d 810, 817, 226 Cal.Rptr. 81, 718 P.2d 68.) The point is to prevent a " *waste[ ] of trial court time'" by "requir[ing] the [appealing party] to undergo a probably unsuccessful court trial merely to obtain an appealable judgment." (Ibid.)
The trial court's decision to bifurcate the equitable defenses to the underlying claim and cause the defenses to be first tried to the court is not such an adverse determination of a critical issue. The trial court might, after all, have ruled in Midiman's favor after hearing all of the evidence. Thus, we agree with Farmers that Midiman, by refusing to go forward with evidence that it was not liable on the underlying Roland claim and that its settlement consideration represented actual damages, has waived the argument for purposes of appeal.[9]

III
The issue in Farmers' cross-appeal is whether the trial court properly ruled on summary adjudication that Farmers breached its duty to provide Cumis counsel. If Farmers had no such obligation, it could not be required to reimburse Midiman for attorney fees expended in settling the Roland litigation. (See Native Sun Investment Group v. Ticor Title Ins. Co. (1987) 189 Cal.App.3d 1265, 1276-1278, 235 Cal.Rptr. 34.)
San Diego Federal Credit Union v. Cumis Ins. Society, Inc., supra, 162 Cal. App.3d 358, 208 Cal.Rptr. 494, was the landmark case which held that "where there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured." (162 Cal.App.3d at p. 375, 208 Cal.Rptr. 494.) Cumis involved a classic conflict. The underlying claimant sought damages for tortious wrongful discharge and intentional infliction of emotional distress. If there had been a finding of willful conduct or an award of punitive damages, the coverage would not have applied. Therefore, the insurer was allied with the claimant on an essential issue of liability.
Section 2860, codifying the right to Cumis counsel, was added to the Civil Code in 1987. Subdivision (a) provides in relevant part: "If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel." Subdivision (b) describes some frequently *97 occurring situations which do and do not give rise to the right: "For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits."
Since the enactment of Civil Code section 2860, it has been uniformly held to be the rule that the right to independent counsel does not arise in every situation where the insurance company defends under a reservation of rights. There must also be evidence that "the outcome of the coverage issue can be controlled by counsel first retained by the insurer for the defense of the underlying claim. [Citation.]" (Blanchard v. State Farm Fire & Casualty Co. (1991) 2 Cal.App.4th 345, 350, 2 Cal.Rptr.2d 884; accord, Truck Ins. Exchange v. Superior Court (1996) 51 Cal. App.4th 985, 994, 59 Cal.Rptr.2d 529.)
In Blanchard, the insurer agreed to defend a general contractor sued by a homeowners association alleging various defects in construction of townhomes. The defense was under a reservation of rights. Interpreting the policy, the court concluded that "[t]he contractor [bore] the risk of repairing or replacing faulty workmanship, while the insurer [bore] the risk of damage to the property of others. [Citation.] If, for instance, faulty workmanship in the framing of drywall led to rainwater leaking in and damaging a homeowner's furnishings, [the contractor] would be indemnified for the damage to the furnishings, but not for the cost of repairing or replacing the faulty workmanship. [Citation.]" (2 Cal. App.4th at pp. 348-349, 2 Cal.Rptr.2d 884.) Because "[t]he coverage issue involved only damages" and "[insurance counsel had no incentive to attach liability to appellant," the court concluded there was no need for independent counsel. (Id. at p. 350, 2 Cal.Rptr.2d 884.) The contractor's reference to "an unspecified possibility of a conflict" did not persuade the court otherwise. (Ibid., original italics.)
Midiman argues that there was an actual conflict because appointed defense counsel had the ability to control the issues in that "[c]ounsel loyal to Farmers could propound special verdicts or interrogatories to the jury which would require findings of damages specifically attributable to these various categories of damage. Counsel loyal to Midiman would select a general verdict form which would not allow such allocations.... Defense counsel would be obligated to conduct discovery into the damages claimed by Roland, and could either emphasize or disregard distinctions between damages arising from sales or from advertising activities." Apparently Midiman is suggesting that Cooper, Kardaras & Scharf would have, in breach of their duty of loyalty to their client, inappropriately injected coverage questions into the underlying litigation even though such issues would have been irrelevant and the ploy could easily have backfired and resulted in the jury attributing a large portion of damages to advertising injury. We are not prepared to assume appointed defense counsel's misfeasance in the absence of any evidence. (See Dynamic Concepts, Inc. v. Truck Ins. Exchange, supra, 61 Cal.App.4th at pp. 1007-1009, 71 Cal.Rptr.2d 882.)
Midiman proposes another basis for conflict: "The trademark claims could [have been] defended by arguing the use of Roland's trademarks in advertisements was not trademark infringement, because the statements were true. [Citing New Kids On The Block v. News America Publishing, Inc. (9th Cir.1992) 971 F.2d 302.] In essence, Midiman's defense to the trademark claim would [have been] that its advertisements proclaimed the Midi GMan *98 included `Roland-compatible sounds' because that was simply a fact, [¶] This trademark defense, however, enhanced the risk of a finding of liability on the copyright infringement claim ... claiming that Midi GMan truly contained Roland sounds was an admission the copyright had been violated."
This potential conflict is also more theoretical than real. Every party to the Roland litigation admitted that the sounds in the Midi GMan were Roland sounds, digitally sampled by Dream, purchased by Crystal, and incorporated into Midiman's device. The only issues in the Roland litigation were whether the sounds were copyrightable and whether Midiman or any other defendant had an equitable defense based on laches or estoppel. Where all the parties to the litigation espouse the same position based on the undisputed facts, the insured cannot manufacture a conflict by pointing out that this position might one day work to the insurer's advantage when coverage is litigated. As long as the origin of the Midi GMan's sound was undisputed, there was no actual conflict and no need for Cumis counsel.
Moreover, we are not persuaded that there is a clear division between the "covered" trademark violations and the "uncovered" copyright claims such that the presence of one negates the existence of the other. As we have noted, the federal court ultimately granted Roland's request for a preliminary injunction on both grounds. There may be instances where even an honest representation can constitute an improper use of a competitor's trademark.
In Dynamic Concepts, Inc. v. Truck Ins. Exchange, supra, 61 Cal.App.4th 999, 71 Cal.Rptr.2d 882, a software company was sued for breach of a sales distribution contract, fraud, RICO (Racketeer Influenced and Corrupt Organization Act), conversion, and libel in denigrating the plaintiffs managing director. (61 Cal.App.4th at p. 1002, 71 Cal.Rptr.2d 882.) Because only the libel claim appeared to raise the possibility of coverage, the company's insurer accepted the defense under a reservation of rights. It designated an attorney to provide a defense. The company refused to accept the defense unless the insurer withdrew its reservation of rights, and thereafter entered into a unilateral settlement with the plaintiff without the insurer's knowledge or consent. The court held (1) an insurer "in an action involving covered and uncovered claims" is not "automatically obliged to provide independent counsel pursuant to Civil Code section 2860" and (2) an insurer does not breach its duty to defend "when it assigns competent outside counsel pending a further analysis of the Cumis issue[.]" (61 Cal.App.4th at p. 1006, 71 Cal.Rptr.2d 882.) As the court explained: "A mere possibility of an unspecified conflict does not require independent counsel. The conflict must be significant, not merely theoretical, actual, not merely potential. [Citations.]" (Id. at p. 1007, 71 Cal.Rptr.2d 882.) "The potential for conflict requires a careful analysis of the parties' respective interests to determine whether they can be reconciled (such as by a defense based on total nonliability) or whether an actual conflict of interest precludes insurer-appointed defense counsel from presenting a quality defense for the insured." (Id. at pp. 1007-1008, 71 Cal.Rptr.2d 882.)
The argument that the insurer-appointed defense counsel might provide "a token defense" because of the insurer's lack of interest in the noncovered claims did not persuade the court that independent counsel was needed: "Had [appointed defense counsel] so misbehaved, they would have been exposed to malpractice liability, disciplinary actions and possible loss of coverage defense by [the insurer]. [Citations.]" (Dynamic Concepts, Inc. v. Truck Ins. Exchange, supra, 61 Cal.App.4th at p. 1008, 71 Cal.Rptr.2d 882, fn. omitted.) As for the insured's insistence that the insurer make an immediate irrevocable decision concerning Cumis counsel at the outset of the litigation, the court stated: "The tripartite relationship between insurer, insured *99 and insurance defense counsel is complicated enough without adding an additional element of a short-fuse deadline for decisions with respect to Cumis counsel. Wherever possible, the tripartite relationship requires all participants to work in harmony as a `loose partnership, coalition or alliance directed toward a common goal, sharing a common purpose' [citation], `to avoid or at least minimize liability.' [Citation.] [¶] The best way to achieve this common purpose is to allow both insurer-appointed defense and independent counsel to participate in the settlement negotiation. What logic or justification was there to exclude [appointed counsel] from the settlement talks? [The insured's] shrill insistence upon doing so strongly suggests an intent to promote a new lawsuit, rather than terminate an existing one. This cannot be countenanced any more than would an effort by appointed counsel to structure a settlement or judgment to defeat coverage." (Id. at p. 1011, 71 Cal. Rptr.2d 882.)
Asserting that Dynamic Concepts is "out of step with California law," Midiman attempts to distinguish it factually in that the insured there wrote "`nasty'" letters to the insurer and filed a bad faith action "prematurely," whereas here "Midiman and its counsel always attempted, in good faith, to resolve its differences with Farmers." The insured's civility or lack thereof was not the basis of the court's holding in Dynamic Concepts. The important lesson to be drawn from the case is that the concept of conflict of interest between an insurer and its insured is not static or set in concrete on the day the claim is tendered. Positions taken at the beginning of the underlying litigation may change, and a nonexistent or theoretical conflict may ripen into an actual one. Since that is so, the insured is ill advised to demand immediate appointment of Cumis counsel before the presence of an actual conflict is revealed, and then, when that demand is rightfully rejected, enter into a hasty settlement in hopes of binding the insurer and building a bad faith lawsuit. The better practice advocated by the court in Dynamic Concepts would be to cooperate with appointed counsel until an actual conflict develops. Put simply, Midiman's nonnegotiable demand for Cumis counsel based on conjecture about conflicts which might reveal themselves in the future as the litigation progressed was premature. No palpable conflict prevented Cooper, Kardaras & Scharf from fully presenting Midiman's defenses of lack of copyrightable material, estoppel, and laches. Midiman's decision to reject appointed counsel and go forward with settlement discussion on its own was done at its own risk.

DISPOSITION
The judgment is reversed with respect to the award of attorney fees to Midiman. It is affirmed in all other respects. The trial court is directed to order judgment in Farmers' favor. Farmers is to recover its costs on appeal.
EPSTEIN, Acting P.J., and HASTINGS, J., concur.
NOTES
[*] The Supreme Court ordered that the opinion be not officially pulished. (See California Rules of Court  Rules 976 and 977.)
[1] The term derives from San Diego Federal Credit Union v. Cumis Ins. Society, Inc. (1984) 162 Cal.App.3d 358, 208 Cal.Rptr. 494 (Cumis), discussed further below.
[2] "MIDI" is an acronym for Musical Instrument Digital Interface, and the MIDI GMan is described as "a compact sound generating module designed for use with an external triggering device such as a keyboard."
[3] In a declaration by appellant Tim Ryan filed in the Roland case, he stated that a Crystal employee had represented to Midiman that the sound contained on the chip had been licensed from Roland.
[4] Apparently, Roland proceeded with its suit against the remaining defendants, and obtained a preliminary injunction. The order granting the preliminary injunction stated: "It is undisputed that Atmel-Dream used a sampler to copy the copyrighted Sound Recordings contained in the Sound Canvas, encoded the Sound Recordings onto computer chips, which they licensed or distributed throughout the world[;] .. . that Atmel-Dream entered into a license agreement with Crystal wherein Crystal used the copied Sound Recordings to manufacture approximately one million chips; [and that] Crystal also sold chips to [appellants] Ryan and Odell, and their company [Midiman] installed the infringing chips into its own sound module known as the `MIDI GMan.'"
[5] In a later hearing, the court specifically ruled that resolution of the case required a "trial within the trial" and that "if that trial within the trial has equitable . . . issues at law, then the jury would decide the legal issues and the court will decide the equitable issues. And it appears to me that the only issues are equitable issues based on the motions in limine ... that Midiman had nothing else [in the underlying case] other than laches and equitable estoppel."
[6] It should be noted that Isaacson was not a failure to defend case. The court discussed the rule in the context of an insurer's alleged breach of duty to accept a reasonable settlement offer, and the issue was whether the insurer should bear the burden of proving that a settlement offer within policy limits was unreasonable or whether the burden should be on the insured to prove that it was reasonable. Despite the fact that the court's discussion of the presumption was not essential to its holding and was a restatement of a long-established rule, we will continue the terminology of the parties, and refer to it as the "Isaacson presumption."
[7] This raises a separate issue  which the parties discuss at length in their briefs  as to whether failure to provide Cumis counsel is the same as failure to defend for purposes of the presumption. Midiman points to no authority for the proposition that failure to provide Cumis counsel is the equivalent of failure to provide coverage or defense. Farmers point to Dynamic Concepts, Inc. v. Truck Ins. Exchange (1998) 61 Cal.App.4th 999, 71 Cal. Rptr.2d 882 for a countervailing view. The court in Dynamic Concepts held that the existence in the underlying litigation of both covered and uncovered claims did not lead to an automatic obligation to provide independent counsel, and that an insurer did not breach its duty to defend when it assigned competent outside counsel pending a further analysis of the Cumis issue. (61 Cal.App.4th at p. 1006, 71 Cal.Rptr.2d 882.) Thus, the court did not reach the precise issue debated by the parties. Because we decide Midiman was not entitled to reimbursement on other grounds, we do not resolve this issue.

Nor do we reach the issue of whether Midiman was obliged to independently establish that the claim for which it sought compensation was covered under the policy. Midiman argues that coverage is presumed when the insurer wrongly refuses to defend. We note that in Lamb, the court stated that three questions remained open in the litigation between the insurer and the insured following a settlement: (1) "whether the liability of the insured was one which the contract of insurance covered"; (2) "the fact of liability"; and (3) "the extent [of liability]. ..." (Lamb v. Belt Casualty Co., supra, 3 Cal.App.2d at p. 631, 40 P.2d 311.) The presumption set forth in Lamb and Isaacson bears only on "the liability of the insured and the amount thereof. ..." (Lamb v. Belt Casualty Co., supra, at p. 631, 40 P.2d 311.)
[8] In this regard, the situation is similar to that in Travelers Ins. Co. v. Lesher (1986) 187 Cal. App.3d 169, 231 Cal.Rptr. 791, disapproved in part on other grounds in Buss v. Superior Court, supra, 16 Cal.4th at page 50, footnote 12, 65 Cal.Rptr.2d 366, 939 P.2d 766, in which the insured contended that his insurance company had failed to conduct the defense with due care and that "he would have prevailed at trial in the underlying action if a proper defense had been provided. ..." (187 Cal.App.3d at p. 197, 231 Cal.Rptr. 791.) The court concluded that he "should have been required to try the underlying . . . action within this bad faith action to sustain his claim that he would have successfully defended the [underlying] action but for [the insurance company's] acts and omissions." (Ibid.)
[9] We would also point out that the justification for stipulating to dismissal and taking an immediate appeal from the trial court's ruling on the presumption issue was that Midiman had "no case at all" after that ruling. Midiman can hardly argue it would have prevailed on the equitable issues and established its right to continue to manufacture the MIDI GMan if permitted to take its case to the jury while, at the same time, premising the propriety of the stipulated dismissal and immediate appeal from the trial court's adverse ruling on the applicability of the Isaacson presumption on its inability to go forward without the benefit of the presumption.