Filed 10/5/21 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NEDE MGMT., INC., et al.,<br><br>　　Plaintiffs and Appellants,<br><br>　　v.<br><br>ASPEN AMERICAN INSURANCE COMPANY et al.,<br><br>　　Defendants and Respondents. | B307470<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV05442)<br><br>**ORDER MODIFYING OPINION**<br><br>[No change in the judgment] |

　　IT IS ORDERED that the opinion filed in the above-captioned matter on September 20, 2021, be modified as follows:

　　1. On page 3, last paragraph, the second sentence beginning with "They believed . . ." is deleted and replaced with:
　　　"They believed these various allegations, if proven, created a conflict of interest between them and Aspen that required Aspen to provide them independent counsel pursuant to section 2860."

2. On page 15, line 7, the sentence beginning with "Fields' handling of the case . . ." is deleted and replaced with: "Fields' handling of the case—and the Darwish family's apparent dissatisfaction with it—is beside the point, unless they can show Fields was serving Aspen and D&H's separate and conflicting interests to their detriment."

3. On page 15, line 4 of the last paragraph, the following is added to the beginning of the sentence, so that it now reads:
"If Fields had entertained such a view, it is part of an attorney's honest assessment about the merits of a case."

This modification effects no change in the judgment.

---

STRATTON, Acting P. J.       WILEY, J.            OHTA, J.[*]

---

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2

Filed 9/20/21 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NEDE MGMT., INC., et al., | B307470 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19STCV05442) |
| v. | |
| ASPEN AMERICAN INSURANCE COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Patricia D. Nieto, Judge.  Affirmed as modified.

Action Legal Team, Michael N. Sofris; Stillman & Associates and Philip H. Stillman for Plaintiffs and Appellants.

BHC Law Group, David Borovsky; Greines, Martin, Stein & Richland, Robert A. Olson and Eleanor S. Ruth for Defendants and Respondents.

————————————

The Darwish family[1] controlled a property in Los Angeles where a fire occurred, killing one person and injuring others. The victims sued. The Darwish family's insurer Aspen American Insurance Co. (Aspen) and managing underwriter Deans & Homer (D&H) defended the action, which ultimately settled without any out-of-pocket payment from the Darwish family. They nevertheless sued Aspen and D&H in this action, alleging a single claim for declaratory relief. They sought a declaration that a conflict of interest existed in the underlying case between them and Aspen and D&H, so they were entitled to so-called *"Cumis"* counsel[2] pursuant to Civil Code section 2860 (section 2860).

The trial court sustained a demurrer without leave to amend and entered judgment for Aspen and D&H, holding no conflict existed as a matter of law, so the Darwish family failed to state a claim for declaratory relief. We conclude the demurrer was the incorrect procedural vehicle to resolve the Darwish family's declaratory judgment claim against Aspen and D&H. However, the Darwish family suffered no prejudice because the second amended complaint (SAC) did not allege a conflict of interest entitling them to independent counsel pursuant to section 2860 as a matter of law. We will therefore modify the judgment to declare the rights adverse to the Darwish family and affirm.

---

[1] We use the shorthand "Darwish family" to refer to plaintiffs Eden, David, and Barbara Darwish, and Eden's company Nede Mgmt., Inc. (Nede). We use their first names where necessary for clarity.

[2] *San Diego Fed. Credit Union v. Cumis Ins. Society* (1984) 162 Cal.App.3d 358, 375 (*Cumis*).

The trial court also granted a motion to strike D&H as a defendant. That ruling is moot, so we need not address it.

## BACKGROUND

We take the facts from the operative SAC, which we assume are true. (*Centex Homes v. St. Paul Fire & Marine Ins. Co.* (2015) 237 Cal.App.4th 23, 26 (*Centex Homes I*).) We also assume the numerous attachments to the complaint are true, and they take precedence over any conflicting allegations in the SAC. (*Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767.)

*Allegations*

On July 4, 2015, a fire occurred on a property covered by the insurance policy at issue. A squatter died. Two tenants, two surviving squatters, and the estate of the deceased squatter sued the Darwish family and their corporate entities, including Nede. The lawsuit alleged claims for wrongful death, negligence, premises liability, and conversion (the *Hall* action).

David and Barbara tendered their defense in the *Hall* action to D&H and Aspen. D&H assumed control of the action and hired attorney Gary Fields as counsel for the Darwish family. Fields' representation was subject to two reservations of rights: Aspen would not pay any judgment exceeding the $1 million policy limit and would not pay punitive damages.

The Darwish family alleged Fields "failed and refused to properly defend" them, outlining specific examples of his faulty representation. They believed his poor representation of them created a conflict of interest between them and Aspen that required Aspen to provide them independent counsel pursuant to section 2860. Specifically, they alleged a conflict of interest arose from Fields' coverage and settlement decisions adverse to them;

3

the manner in which Fields defended the action; and Fields' failure to defend against punitive damages. This alleged conflict was reflected in Fields' failure to communicate an initial settlement demand within policy limits and failure to fully investigate the case.

Aspen and D&H denied the request for independent counsel for David and Barbara. In their view, the reservation of rights limited to damages exceeding policy limits and punitive damages did not create a conflict of interest that triggered a right to independent counsel.

Aspen did, however, approve independent counsel for Nede for a time. Nede was not a named insured, so the approval was subject to a reservation of rights that Nede was deemed an insured under the policy in its role as the building's property manager. Aspen also denied any obligation to pay damages arising from any act or omission by Nede in any capacity other than as property manager.

Nede retained separate counsel. According to the SAC, Aspen's counsel interfered with that independent representation in various ways. Nonetheless, Aspen paid Nede's counsel's invoices, subject to reductions. A little less than a year after approval, Aspen terminated approval for Nede's separate counsel because it had revoked its reservation of rights.

The *Hall* action eventually settled. Although not expressly alleged in the SAC, there appears to be no dispute the Darwish family paid nothing out of pocket for the settlement.

*Procedural History*

The Darwish family sued Aspen and D&H, alleging a single claim for declaratory relief seeking a declaration of their rights pursuant to section 2860. In the operative SAC, they alleged an

4

actual conflict of interest existed between them and insurer-appointed counsel, so they sought a declaration they were entitled to independent counsel at Aspen's expense for the periods prior to December 2017 and after September 10, 2018.

Aspen and D&H demurred to the SAC. The trial court sustained the demurrer without leave to amend. The court viewed the declaratory relief claim as "wholly derivative" of an unpled substantive claim under section 2860. The substantive claim failed because Aspen's reservations of rights for punitive damages and for claims in excess of policy limits did not trigger the right to independent counsel under section 2860. The court also held the allegations that insurer-appointed counsel improperly litigated the *Hall* action did not create the type of conflict of interest triggering section 2860.

As for Nede, Aspen was entitled to withdraw its reservation of rights, and nothing alleged in the SAC entitled Nede to independent counsel after that time.

The court also held any fee dispute had to be resolved in arbitration per section 2860, subdivision (c).

D&H had also filed a motion to strike D&H as a defendant. After the court sustained the demurrer, it noted the motion to strike was moot but granted it anyway. It held the SAC did not sufficiently allege D&H was an insurer, and section 2860 on its face applies only to insurers.

DISCUSSION

## I.     Standard of Review

We independently review the sustaining of a demurrer. (*Centex Homes I, supra,* 237 Cal.App.4th at p. 28.) We assume the truth of properly pleaded facts, and we give the complaint a reasonable interpretation, reading it as a whole. (*Ibid.*) We

5

review the denial of leave to amend for abuse of discretion, asking whether there is "a reasonable possibility that the complaint can be cured by amendment." (*Ibid.*)

## II. The Demurrer Was Improperly Sustained But the Darwish Family Suffered No Prejudice

Before turning to section 2860, we address the Darwish family's argument that the trial court's order must be reversed because the SAC sufficiently alleged a controversy subject to declaratory relief, "regardless of whether the plaintiff is entitled to the requested relief." Citing *Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794 (*Ball*), the trial court disagreed, viewing the declaratory relief claim as "wholly derivative" of a substantive claim under section 2860, and "if the underlying substantive claim fails, the demurrer may properly be sustained."

As we explain, the trial court's reasoning sustaining the demurrer was incorrect, but the error was not prejudicial because Aspen and D&H were entitled to judgment as a matter of law. (See *Robertson v. Saadat* (2020) 48 Cal.App.5th 630, 639 ["We are not bound by the trial court's reasoning and may affirm the judgment if correct on any theory."].) The proper course is to modify the judgment to reflect a declaration adverse to the Darwish family and affirm.

" ' " 'The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject.' " [Citations.] The language of Code of Civil Procedure section 1060 appears to allow for an extremely broad scope of an action for declaratory relief: "Any person interested under a written instrument . . . or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of

6

actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract." ' " (*Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 181.)

The Darwish family relies on a line of cases holding that " '[a] general demurrer is usually not an appropriate method for testing the merits of a declaratory relief action, because the plaintiff is entitled to a declaration of rights even if it is adverse to the plaintiff's interest.' " (*Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 751; see *Lockheed Martin Corp. v. Continental Ins. Co.* (2005) 134 Cal.App.4th 187, 221 (*Lockheed*), disapproved on another ground by *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1036, fn. 11; *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 606.)

This rule dates back at least to *Maguire v. Hibernia Savings & Loan Soc.* (1944) 23 Cal.2d 719 (*Maguire*), which held, "Section 1060 of the Code of Civil Procedure provides that a party may bring an action for 'a declaration of his rights and duties in the premises' and that the 'declaration may be either affirmative or negative in form and effect.' It contains no suggestion that the pleader must allege facts entitling him to a favorable declaration." (*Id.* at p. 730; accord, *Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540, 549–550 ["It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a

contract and requests that the rights and duties be adjudged. (Code Civ. Proc., § 1060.)  If these requirements are met, the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration."]; *Columbia Pictures Corp. v. DeToth* (1945) 26 Cal.2d 753, 760.)

Courts have recognized this rule can often lead to a waste of court and litigant resources when it is clear the plaintiff seeks a declaration of rights to which he or she is not legally entitled. It would seem unnecessary to reverse a judgment sustaining a demurrer simply because an "actual controversy" has been alleged.  (*Lockheed, supra,* 134 Cal.App.4th at pp. 221–222 ["If the appellate court's decision on the merits would necessarily result in a declaration unfavorable to the plaintiff, reversal would be an idle act."].)  Although the sustaining of the demurrer might be technically incorrect, reversing "would merely provoke further appellate recourse since the record discloses that the trial court dismissed the case on the merits and the legal issues are clearly presented by the pleadings."  (*Zeitlin v. Arnebergh* (1963) 59 Cal.2d 901, 908; see *Salsbery v. Ritter* (1957) 48 Cal.2d 1, 7 ["Our decision that controversies are shown to exist, however, does not resolve them, and we must therefore pass upon the questions of law that must be decided to reach a final determination of the case."].)

Hence, "where a complaint sets forth a good cause of action for declaratory relief regarding only a disputed question of law, declarations on the merits unfavorable to a plaintiff have been upheld although such determinations were made in the form of a judgment sustaining a demurrer."  (*Jefferson Incorporated v. City of Torrance* (1968) 266 Cal.App.2d 300, 303.)  " '[W]hile Code of

Civil Procedure section 1060 entitles a plaintiff suing pursuant to its provisions to a declaration of rights and duties even if the eventual declaration may be adverse [citations], error of the trial court in refusing to entertain the action is nevertheless not prejudicial if it is clear from the face of the complaint that the plaintiff's position is untenable and that a declaration adverse to the plaintiff will end the matter.' " (*Jones v. Daly* (1981) 122 Cal.App.3d 500, 511.)

In this circumstance, courts treat the appellate opinion as "in effect a declaratory judgment.  [Citation.]  The proper procedure is to modify the judgment to make that declaration and affirm the judgment as modified." (*Lockheed, supra,* 134 Cal.App.4th at p. 222; see *Essick v. City of Los Angeles* (1950) 34 Cal.2d 614, 624; *Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460–461 ["Strictly speaking, a demurrer is not an appropriate weapon to attack a claim for declaratory relief inasmuch as the plaintiff is entitled to a declaration of its rights, even if adverse.  [Citation.]  However, because no benefit would be served by reversal and remand to the trial court for entry of a judgment declaring that Farmers has no right to recovery from defendant, this opinion shall serve as a declaration of rights and duties."].)

The trial court and Aspen and D&H rely on *Ball* to support dismissal, which did not acknowledge the *Maguire* line of authority.  In that case, the Court of Appeal affirmed the denial of a motion for leave to amend a complaint because the plaintiff failed to adequately allege a substantive statutory violation. (*Ball, supra,* 164 Cal.App.4th at p. 798.)  The court held a declaratory relief claim based on the same statutory claim could not be adequately alleged because it was "wholly derivative" of

the statutory claim. (*Id.* at p. 800.) For support, the court cited only *Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 794 (*Ochs*). That case did not discuss the *Maguire* line of cases, either. In two sentences with no citation of authority, *Ochs* simply affirmed the sustaining of a demurrer to declaratory and injunctive relief claims because they were "wholly derivative" of other claims for statutory violations the court had found lacking. (*Ibid.*)

We need not follow *Ball* or *Ochs*, which did not involve a stand-alone declaratory relief claim as in this case. Instead, we will apply the rule in *Maguire*. Here, the Darwish family adequately alleged an "actual controversy" under the declaratory relief statute, so the trial court technically should have overruled the demurrer. But we agree with those cases that treat the error as non-prejudicial because the SAC fails to allege the kind of conflict of interest that would have entitled the Darwish family to independent counsel pursuant to section 2860. This is a question of law precluding a declaration in their favor, so we will modify the judgment to reflect a declaration adverse to their claim.[3]

" 'Generally, an insurer owing a duty to defend an insured, arising because there exists a potential for liability under the policy, "has the right to control defense and settlement of the third party action against its insured, and is . . . a direct participant in the litigation." [Citations.] The insurer typically hires defense counsel who represents the interests of both the

---

[3]   Because we conclude the Darwish family is not entitled to independent counsel as a matter of law, we need not address Aspen and D&H's alternate argument that the declaratory relief claim addresses only past wrongs.

10

insurer and the insured.' " (*Centex Homes v. St. Paul Fire & Marine Ins. Co.* (2018) 19 Cal.App.5th 789, 797 (*Centex Homes II*).)

Pursuant to section 2860, however, "[i]f the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel." (§ 2860, subd. (a).) "For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist." (*Id.*, subd. (b).)

Often called *Cumis* counsel, section 2860 creates a right for an insured to obtain independent counsel at the insurer's expense whenever their competing interests create an ethical conflict for the insurer-appointed counsel. (*Centex Homes I, supra,* 237 Cal.App.4th at p. 30.) Section 2860, subdivision (b) and case law make clear that " 'not every reservation of rights entitles an insured to select *Cumis* counsel.' [Citation.] Whether independent counsel is required 'depends upon the nature of the coverage issue, as it relates to the issues in the underlying case.' [Citation.] 'There must . . . be evidence that "the outcome of [the] coverage issue can be controlled by counsel first retained by the insurer for the defense of the [underlying] claim." ' [Citation.] '

11

"It is only when the basis for the reservation of rights is such as to cause assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case that a conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise." ' [Citation.]

"California law is settled that 'there is no entitlement to independent counsel where the coverage issue is " 'independent of, or extrinsic to, the issues in the underlying action [citations].' " [Citation.] Stated otherwise, "where the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action, there is no conflict of interest requiring independent counsel." ' [Citation.]

" 'A mere possibility of an unspecified conflict does not required independent counsel. The conflict must be significant, not merely theoretical, actual, not merely potential.' [Citation.] A case by case analysis is required: 'The potential for conflict requires a careful analysis of the parties' respective interests to determine whether they can be reconciled (such as by a defense based on total nonliability) or whether an actual conflict of interest precludes insurer-appointed defense counsel from presenting a quality defense for the insured.' " (*Centex Homes II, supra,* 19 Cal.App.5th at pp. 797–798.)

Aspen's reservation of rights for punitive damages and damages beyond policy limits did not create a conflict of interest triggering section 2860. " '[T]he mere fact the insurer disputes coverage does not entitle the insured to *Cumis* counsel; nor does the fact the complaint seeks punitive damages or damages in excess of policy limits. ( . . . § 2860, subd. (b); [citations].) The insurer owes no duty to provide independent counsel in these situations because the *Cumis* rule is not based on insurance law

12

but on the ethical duty of an attorney to avoid representing conflicting interests.' " (*James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, 1101 (*James 3*); see *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1394 (*Golden Eagle*).)

That leaves the Darwish family's allegations that Fields "failed and refused to properly defend" them in various ways in the *Hall* action. They misunderstand the nature of the right to independent counsel under section 2860. The conflicts of interest contemplated by section 2860 do not include an insured's mere dissatisfaction with the performance of insurer-appointed counsel. That is because "an insurer has the right to control the defense it provides to its insured provided there is no conflict of interest." (*James 3, supra,* 91 Cal.App.4th at pp. 1105–1106.) The right to control the defense would be gutted if the insured could create a conflict of interest merely by complaining about how insurer-appointed counsel is handling the case.

*Cumis* and section 2860 are concerned with an attorney's dual representation of the insurer and insured when *their* interests conflict. " 'In the usual tripartite relationship existing between insurer, insured and counsel, there is a single, common interest shared among them. Dual representation by counsel is beneficial since the shared goal of minimizing or eliminating liability to a third party is the same.' " (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1419–1420 (*Gafcon*).) However, "an attorney having such dual agency status is subject to the rule that a ' "[c]onflict of interest between jointly represented clients occurs whenever their common lawyer's representation of the one is rendered less effective by reason of his representation of the other." ' " (*Id.* at p. 1420.)

13

Hence, the *Cumis* rule and section 2860 spring from "the ethical duty of an attorney to avoid representing conflicting interests.  As the court stated in the *Cumis* opinion:  'We conclude the Canons of Ethics impose upon lawyers hired by the insurer an obligation to explain to the insured and the insurer the full implications of joint representation in situations where the insurer has reserved its rights to deny coverage.  If the insured does not give an informed consent to continued representation, counsel must cease to represent both.  Moreover, in the absence of such consent, where there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured. . . .  Disregarding the common interests of both insured and insurer in finding total nonliability in the third party action, the remaining interests of the two diverge to such an extent as to create an actual, ethical conflict of interest warranting payment for the insureds' independent counsel.'  [Citation.]  This holding was based on a long line of attorney-client conflict of interest cases as well as the American Bar Association Code of Professional Responsibility. [Citations.]"  (*Golden Eagle, supra,* 20 Cal.App.4th at pp. 1394–1395.)

The Darwish family has not alleged that Fields was thrust into any ethical conflict of interest in his representation of them and Aspen and D&H.  They alleged no dispute over coverage.  Aspen and D&H did not reserve any rights related to coverage beyond an excess-limits damage award and punitive damages, which did not create an ethical conflict for Fields.  The Darwish family points to nothing suggesting their interests diverged from

14

Aspen's and D&H's interests, forcing Fields to represent one to the detriment of the other. All parties were aligned in defending the *Hall* action to minimize or avoid liability. In other words, Fields "had no incentive to attach liability to appellant." (*Blanchard v. State Farm Fire & Casualty Co.* (1991) 2 Cal.App.4th 345, 350.) Fields' handling of the case—and the Darwish family's dissatisfaction with it—is beside the point, unless perhaps his poor performance shows he was serving Aspen and D&H's separate and conflicting interests to their detriment. But the SAC contains no allegations that any such conflict existed that might have encouraged Fields to perform poorly in order to serve Aspen's rights over the Darwish family's rights.

True, the circumstances giving rise to a conflict of interest are not limited to section 2860. (*Gafcon, supra,* 98 Cal.App.4th at p. 1421.) The Darwish family invokes the situation "where an attorney who represents the interests of both the insurer and the insured finds that his or her 'representation of the one is rendered less effective by reason of his [or her] representation of the other.'" (*James 3, supra,* 91 Cal.App.4th at p. 1101.) They point to three examples.

First, they cite the "unremitting hostility" of D&H and Fields toward the Darwish family, exemplified by the belief that the Darwish family would be bad witnesses who could not be believed. This is not a conflict of interest. It is part of an attorney's honest assessment about the merits of a case. It serves both the insurer and the insured. For the insurer, it can inform the decision whether to litigate or settle. For the insured, it might avoid a much higher damages award if a jury dislikes the insured's testimony or finds them not credible. By assessing how a jury might react to testimony from the Darwish family,

15

Fields was serving his clients' aligned interests in avoiding liability.

Next, the Darwish family cites the rejection of a policy-limit settlement demand at the start of the *Hall* action without consulting them. They focus on the fact that they might have been exposed to damages exceeding policy limits or punitive damages. But Aspen and D&H were simply exercising the right to control the defense. The policy gave Aspen and D&H discretion to investigate and settle claims as they "decide is appropriate." " 'Under a policy provision giving an insurance company discretion to settle as it sees fit, the insurer is "entitled to control settlement negotiations without interference from the insured." ' " (*Hurvitz v. St. Paul Fire & Marine Ins. Co.* (2003) 109 Cal.App.4th 918, 931.)

According to a letter attached to the complaint, Fields told Barbara and David he believed the policy limits demand was "clearly premature." In responding to the demand, Fields chronicled in detail all of the outstanding issues. We need not list them here. Suffice it to say, they were all aimed at defending the Darwish family *and* Aspen and D&H equally.

Finally, the Darwish family alleges insurer-appointed counsel advised Nede's *Cumis* counsel during later settlement discussions that the Darwish family needed independent counsel because the latest settlement demand exceeded policy limits. This guidance was sound. Aspen and D&H could not settle the case beyond the policy limits without permission from the Darwish family or providing them independent counsel if the Darwish family was expected to pay for the excess amount. One of the circumstances requiring independent counsel is "where the insurer pursues settlement in excess of policy limits without the

16

insured's consent and leaving the insured exposed to claims by third parties." (*James 3, supra,* 91 Cal.App.4th at p. 1101; see *Golden Eagle, supra,* 20 Cal.App.4th at p. 1396 ["clear conflict of interest" existed when insureds refused to consent to settlement exceeding policy limits].) The SAC does not allege Aspen *pursued* a settlement beyond policy limits or even considered accepting this latest demand. At best, there was a " 'mere possibility of an unspecified conflict,' " which does not require independent counsel. (*Centex Homes II, supra,* 19 Cal.App.5th at p. 798.)

The SAC has alleged no divergence between the Darwish family's interests and Aspen and D&H's interests in the *Hall* action. The Darwish family may not have liked or agreed with Fields' litigation decisions, but they have alleged no circumstance that prevented Fields from serving both their interests and Aspen's interests. Absent some coverage dispute or reservation of rights that created a risk that Fields will serve Aspen's interest to their detriment, independent counsel was not warranted.

## III.   The Trial Court Properly Denied Leave to Amend

As we have explained, sustaining the demurrer was the incorrect procedure to dispose of the SAC. Because the Darwish family is subject to an adverse judgment on the merits, rather than simply dismissal, it is questionable whether they have the right to amend. In any case, they did not address the trial court's denial of leave to amend in their briefs on appeal. They have failed to show the trial court abused its discretion in denying leave to amend. (*Centex Homes I, supra,* 237 Cal.App.4th at p. 32.)

17

## IV.    The Motion to Strike D&H Is Moot

The Darwish family challenges the trial court's grant of D&H's motion to strike it from the SAC.  Because we modify the judgment in Aspen and D&H's favor, that ruling is moot. We need not address it.

### DISPOSITION

The judgment is modified to declare (1) no conflict of interest existed entitling the Darwish family to independent counsel pursuant to section 2860 in the *Hall* action prior to December 2017 and after September 10, 2018; and (2) Aspen and D&H had no obligation to pay the Darwish family's reasonable attorney's fees incurred in the *Hall* action during that time.

The judgment is affirmed as modified.  Aspen and D&H are entitled to costs on appeal.

OHTA, J.*

I Concur:

STRATTON, Acting P. J.

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18

**WILEY, J.**, Concurring in the result.

I write to attack the notion there is something improper about resolving a suit for declaratory judgment on demurrer. There is not.  So long as the parties agree the declaratory judgment complaint serviceably states the facts, a demurrer is the speedy and efficient way to resolve an "actual controversy." (Code Civ. Proc., § 1060.)  Appellate courts should praise, not disparage, this procedure.

If the declaratory judgment complaint alleges facts the defendant thinks are incorrect or incomplete, then a demurrer is not the right way to go, for the demurrer procedure requires the court to accept the factual pleading as it stands.  (Cf. *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 756 ["on the few facts known" about the situation, the court "cannot say" what the right answer is] (*Qualified*).)  For material factual disputes, we need a fact finder:  a jury or bench trial.

In declaratory judgment cases, dispute over the facts may be common.  (Cf. *Jefferson, Inc. v. City of Torrance* (1968) 266 Cal.App.2d 300, 302 [the defense is rarely satisfied with the complaint's statements of the facts].)  Whether that is true does not matter here, where there is no factual dispute.  What divided the parties was a pure and ripe question of law:  whether Civil Code section 2860 entitled the Darwish family to independent counsel.  The trial court, and now the Court of Appeal, have declared the answer to this legal question.  A demurrer thus *was* the right way to go.

The demurrer procedure in this case was appropriate and sensible.  Of the procedural alternatives, the demurrer was the fastest way to resolve the only issue in this case.  Other

alternatives—summary judgment or full trial—would have been slower.  They would have cost more resources but yielded no more benefit.  Nothing in the text of sections 1060 or 1061 of the Code of Civil Procedure favors this irrationality.

The authority for the appropriate and sensible demurrer approach is the memorable 1963 case of *Zeitlin v. Arnebergh* (1963) 59 Cal.2d 901 (*Zeitlin*).  There the renowned Los Angeles bookseller Jacob Zeitlin sued Los Angeles City Attorney Roger Arnebergh about Arnebergh's efforts to suppress Henry Miller's then-controversial Tropic of Cancer.  Zeitlin appended the book to his complaint for declaratory judgment.  Zeitlin wanted a judicial declaration that Tropic of Cancer was *not* criminally obscene so he could sell copies without fear of prosecution.  Defendant and prosecutor Arnebergh answered the complaint and said he believed the book was criminally obscene and he intended to prosecute anyone arrested for its sale.  (*Id.* at pp. 903–905.)

Both sides in *Zeitlin* agreed on the facts:  the words in Tropic of Cancer.  The sole question was whether those words were obscene within the meaning of the Penal Code.  That question was strictly legal.  (*Zeitlin, supra,* 59 Cal.2d. at pp. 908–911.)

*Zeitlin* validated using a demurrer to decide the merits of a declaratory judgment action.  Arnebergh had filed a general demurrer to Zeitlin's complaint.  The trial court sustained the demurrer because the trial court read the book and ruled, on the merits, it was obscene.  (*Zeitlin, supra,* 59 Cal.2d. at p. 905.)  For a unanimous Supreme Court, Justice Tobriner held the demurrer procedure was right but the substance of the ruling was wrong:  Tropic of Cancer was not criminally obscene.  (See *id.* at pp. 908–923.)

2

After *Zeitlin*, it is legally wrong to say the demurrer procedure is an inappropriate method for testing the merits of a declaratory relief action. Some more recent authorities thus err. (E.g., *Qualified*, *supra*, 187 Cal.App.4th at p. 751; *Lockheed Martin Corp. v. Continental Ins. Co.* (2005) 134 Cal.App.4th 187, 221, disapproved on another ground by *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1036, fn. 11; 5 Witkin, Cal. Procedure (5th ed. 2008 & 2020 supp.) Pleading, § 877.)

This means there is no reason to accuse a thoughtful trial court like this one of error of any kind.

The 1944 decision in *Maguire v. Hibernia Savings & Loan Society* (1944) 23 Cal.2d 719 (*Maguire*) did not erect a general ban on demurring to declaratory judgment complaints. In *Maguire*, the trial court *refused* to do what the trial court here laudably did: analyze the merits of an "actual controversy" and answer a question that divided the litigants. (See *id.* at p. 723 [rather than engage the merits, the *Maguire* trial court avoided the merits by saying declaratory relief was neither necessary nor proper].)

*Zeitlin* cited *Maguire* and repeated its holding: "a plaintiff is entitled to a declaration of his rights, whether the declaration be favorable or adverse . . . ." (*Zeitlin*, *supra*, 59 Cal.2d. at p. 908.) *Zeitlin* then explained what the trial court's proper demurrer ruling should have been: Tropic of Cancer was not criminally obscene. (See *id.* at p. 922 ["Such an art-form must be distinguished from that which is designed to excite or attract pruriency; [Tropic of Cancer] surely does not constitute hard-core pornography."].)

This trial court did as *Zeitlin* commanded. The plaintiffs in this case were entitled to a declaration of their rights. The trial

3

court gave them that declaration—on demurrer.  Unlike the trial court in *Maguire*, the trial court here rendered a declaration on the merits.  Then it signed the judgment.  As a practical matter, that *was* a declaratory judgment, for the judgment embodied the preceding statement of decision that was its rationale.  (See *Maguire*, *supra*, 23 Cal.2d at p. 729 ["where the plaintiff is not entitled to a favorable declaration, the court should render a judgment embodying such determination and should not merely dismiss the action"].)

It might be a good practice for a trial court, after ruling on a decisive demurrer in a declaratory judgment action, to cut and paste the court's substantive legal analysis into the judgment itself, rather than leaving that substance in a separate minute order or a statement of decision.  (See *Essick v. City of Los Angeles* (1950) 34 Cal.2d 614, 624–625.)  Then the "judgment" literally would "declare" the rights and duties of the parties; voilà:  the demurrer would produce a "declaratory judgment" in name and in fact.  (Cf. *Guinn v. County of San Bernardino* (2010) 184 Cal.App.4th 941, 951 ["Although the statement of decision makes it clear that the court denied the petition on its merits, the judgment does not."].)

But here no party made this request.  The court already had given the parties all they evidently needed.

In sum, defendants that accept the pleaded facts should, as these defendants did, demur to declaratory judgment complaints that properly allege actual controversies. Trial courts should, as this one did, take up the actual controversies on demurrer and give the parties what they want and deserve: an authoritative answer to a legal question that divides them. This will serve the parties, the public, and the cause of justice.

WILEY, J.